**UNITED STATES of America, Petitioner–Appellee,**

**v.**

**Walter L. MEDLIN, as custodian of records or representative or registered agent or officer or director or stockholder of Medlin Investment Company; Cheyenne Social Club; SST Air & Auto Museum, Inc.; National Land & Investment Corporation; International Land and Investment Corporation; Florida Land and Investment Co.; Majestic Oaks, Inc.; Island Living, Inc.; Orlando Land and Investment Co.; Monarch Realty, Inc.; Lake Vista Plaza, Inc.;**

Frank's Corner, Inc.; Central Florida Transportation Museum, Inc.; Waltin Investment Co.; Michigan Avenue Car Wash; Neptune Four Ltd.; Discount Mowing, Inc.; Sports Pix News, Inc.; Florida Billboard Co.; Florida National Land Investment Company, Inc., Respondents–Appellants.

No. 92–2140.

United States Court of Appeals, Eleventh Circuit.

March 22, 1993.

David D. Fussell, Orlando, FL, for respondents-appellants.

Kendell W. Wherry, Asst. U.S. Atty., Orlando, FL, Richard Resnick, Tax Div., U.S. Dept. of Justice, Washington, DC, Tamra Phipps, Asst. U.S. Atty., Tampa, FL, Gary R. Allen, Chief (lead counsel), Kevin M. Brown, Brian C. Griffin, Charles E. Brook-

hart, Appellate Section, Tax Div., Dept. of Justice, Washington, DC, for petitioner-appellee.

Before HATCHETT, Circuit Judge, HENDERSON and ESCHBACH *, Senior Circuit Judges.

HENDERSON, Senior Circuit Judge:

This appeal focuses on whether an Internal Revenue Service ("IRS") summons is overbroad and whether enforcing the summons would violate the appellant's Fifth Amendment privilege against compelled self-incrimination. For the reasons that

follow, we affirm the order of the district court enforcing the summons.

## I. BACKGROUND

During an investigation of the tax liability of the appellant, Walter L. Medlin, the IRS issued a summons to Medlin pursuant to the authority of 26 U.S.C. § 7602[1] to produce records possessed by him in his capacity as custodian of records, representative, registered agent, officer, director or stockholder of twenty named corporations. The summons sought documents "relating to" the twenty corporations "to include but not be limited to the following [14 categories]."[2] Medlin refused to produce the doc-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Section 7602 provides in part:

   (a) **Authority to summon, etc.**—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. The categories specifically named were:

   1. Copies of any and all Federal Income Tax Returns, IRS forms 1065, 1120 or 1120s for the years 1984 through 1988 and any and all attachments thereto, including Schedule K1, for the aforementioned companies.

   2. Work papers, schedules, memorandums, notes, correspondence with auditors or accountants or other documents used in the preparation of those Federal tax returns described in item 1.

3. Any and all monthly, quarterly, and annual (whether calendar or fiscal) financial statements and any and all work papers, schedules, memoranda, notes, records used in the preparation of these financial statements.

4. Documents showing any and all financial institutions, corporations, partnerships, individuals, or other entities from which the companies have borrowed funds, guaranteed obligations of any individual, corporation, or other entity or pledged assets or obtained loans from, and any and all entities to which the companies have loaned funds and documents reflecting said indebtedness including mortgages, deeds, and closing statements.

5. Any and all credit card statements, receipts and invoices for credit cards maintained by the companies and used by any of each company's employees, officers, directors or stockholders.

6. Journals reflecting receipts and disbursements.

7. Ledgers, general and subsidiary.

8. Vouchers, bills, receipts, invoices, and any other supporting documents related to expenditures, reimbursements and billing procedures.

9. Contracts to which the companies or their representatives are parties thereto.

10. Any and all computer or mechanical printouts of records which reflect the financial condition or activity of the companies.

11. Documents showing any and all financial institutions or other entities, foreign or domestic, in which the companies or their representatives have deposited funds, placed monies in trust or maintained financial accounts for the aforementioned entities or their representatives.

12. Corporate minute books.

13. Records concerning the issuance of stock.

14. Bank records to include statements, deposits, cancelled checks, and check registers.

uments and the IRS petitioned the United States District Court for the Middle District of Florida to enforce the summons. 26 U.S.C. §§ 7402(b)[3] & 7604(b).[4]

The district court issued an order to show cause why the summons should not be enforced and later held a hearing pursuant to that order. At the hearing, Medlin maintained that 1) the summons was overbroad in that it did not specifically identify the documents sought, 2) complying with the summons would violate his Fifth Amendment privilege against compelled self-incrimination, 3) the IRS already possessed some of the documents it had requested from him and 4) he had no duty as a stockholder of the corporation to maintain or produce corporate records. The district court granted partial relief by modifying the summons so as to not require Medlin to produce any documents he held as a stockholder or any records already acquired by the government. The court denied the remaining grounds of relief and otherwise enforced the summons. Medlin has produced the fourteen specific categories of documents but on appeal asks to have the language "relating to" and "to include but not be limited to the following" stricken from the summons.

## II. JURISDICTION AND STANDARDS OF REVIEW

■ We have jurisdiction to entertain an appeal of this final order of the district court pursuant to 28 U.S.C. § 1291. An order enforcing an IRS summons will not be reversed unless clearly erroneous. *See*

**3.** Section 7402(b) provides:

> If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

**4.** Section 7604(b) provides:

> Whenever any person summoned under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge

*La Mura v. United States,* 765 F.2d 974, 981–82 (11th Cir.1985); *United States v. Saunders,* 951 F.2d 1065, 1066 (9th Cir. 1991). Whether enforcement of the summons as modified would violate Medlin's Fifth Amendment privilege against compelled self-incrimination is a mixed question of law and fact. *In re Grand Jury Subpoena,* 957 F.2d 807, 809 (11th Cir.1992). We review the factual findings for clear error and the application of law to those facts *de novo. Id.*

## III. DISCUSSION

In order to succeed in enforcing a summons, the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed." *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The IRS may satisfy its minimal burden "merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *La Mura v. United States,* 765 F.2d 974, 979 (11th Cir.1985). Once the showing required by *Powell* has been made, the "burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *Id.* at 979–80. In this

of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

appeal, Medlin claims enforcement of the summons would be an abuse of the court's process because 1) the summons is overbroad and 2) forcing him to comply with the summons would violate his Fifth Amendment privilege against compelled self-incrimination.

### A. Overbreadth

■ An IRS summons is overbroad if it "does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Wyatt*, 637 F.2d 293, 302 n. 16 (5th Cir. Feb. 17 1981).[5] The summons, IRS Form 2039, requests "the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown." The person identified as the object of the investigation is Walter L. Medlin. The records sought, as limited by the district court, are "All records in your custody, care, possession, or control [as custodian of records, representative, registered agent, officer or director] relating to the following [twenty] corporations ... for the period January 1, 1985 through December 31, 1988 to include but not be limited to the following [fourteen categories]."

The summons thus specified the subject matter of the documents requested, the source of those documents and the limited time period from which the documents were to be drawn. Medlin urges that the "relating to" and "to include but not be limited to the following" language could be read either to inject ambiguity into which documents are sought or to require him to produce all the records of the corporations for the four years specified, regardless of their relevance. However, the district court could reasonably find that the summons provides sufficient information such

that Medlin is not required to blindly guess at what he must produce. The district court also could reasonably find that Medlin did not satisfy his burden of disproving the IRS's showing of relevance under *Powell*. The district court's finding rejecting the overbreadth challenge was not clearly erroneous.

### B. Self–Incrimination

■ Medlin next argues that deciding which documents to produce and then actually producing them would constitute testimonial acts personally incriminating to him and would violate his Fifth Amendment privilege against compelled self-incrimination if used against him at trial. He is concerned whether *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), provides the same protection for him as for the custodian subject to a grand jury subpoena in that case.

In *Braswell* the custodian of certain corporate records sought to avoid a grand jury subpoena on the ground that producing the requested records would be a personally incriminating testimonial act that could later be used against him in court. The Supreme Court held that the record keeper could not refuse to produce the records on that ground, but that his individual act of producing the documents could not be used against him in a criminal prosecution. If the custodian were later tried on criminal charges and the government used the documents he produced in response to the grand jury subpoena, the government could inform the jury that the corporation produced the records, but it could not disclose to the jury that the custodian personally did so on behalf of the corporation. *Braswell*, 487 U.S. at 118, 108 S.Ct. at 295.

The IRS acknowledges, and we agree, that Medlin is entitled to the *Braswell* protections. He may not refuse to comply with the summons on grounds that his acts of selecting the documents to produce and producing those documents in his capacity as custodian for the corporations may be

---

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down before October 1, 1981.

**468**

used to personally incriminate him. *Braswell* prohibits the revelation of his "individual act" of selecting and producing the records being used against him. *Id.*

Medlin also is fearful that his privilege against compelled self-incrimination is implicated because the summons calls on him to testify, not just produce the requested documents. To the extent that he will be called on merely to identify and authenticate the documents he is required to produce—which the government argues in its brief is the only testimony that will be sought from him—that argument is without merit. *Braswell,* 487 U.S. at 114–15, 108 S.Ct. at 2293–94 (citing *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957)). Such testimony merely makes explicit what is already implicit in complying with the summons. *Id.*

## IV. CONCLUSION

The order of the district court enforcing the modified summons over Medlin's objection that it is overbroad is not clearly erroneous. He may not refuse to comply with the summons on the ground that his Fifth Amendment privilege against compelled self-incrimination would be violated because he is entitled to the protections afforded by *Braswell.* Accordingly, the order of the district court is AFFIRMED.