**Peter J. RUMSAVICH, Plaintiff–Appellant,**

v.

**Daniel M. BORISLOW, Defendant–Appellee.**

No. 98–1207.

United 'States Court of Appeals, Seventh Circuit.

·Argued Aug. 5, 1998.

Decided Aug. 28, 1998.

Roy P. Amatore, Marty J. Schwartz (argued), Chicago, IL, for Plantiff–Appellant.

Damon E. Dunn, Levin & Funkhouser, Chicago, IL, Philip W. Horton (argued), Arnold & Porter, Washington, DC, for Defendant–Appellee.

Before BAUER, HARLINGTON WOOD, JR., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Most suits under the diversity jurisdiction seeking to collect on unpaid promissory notes are straightforward affairs. Not this one. The supposed maker of the note contended that the document is phony. After a bench trial, the district judge concluded that plaintiff Peter Rumsavich is a forger and a perjurer.

Rumsavich received payments from Tel–Save, Inc., for marketing long distance communication services. A dispute developed over their size and whether Rumsavich was supposed to remit some or all of them to a telemarketing firm that did much of the work of drumming up business. When Rumsavich and Tel–Save had their falling out, each claimed that the other owed it money. By 1996 Rumsavich was in financial distress as a result of a failed pizza venture (his activities peddling partnership interests in that business led both Illinois and Indiana to bar Rumsavich from ever selling securities again, and led the National Association of Securities Dealers to fine and expel him) and ongoing difficulties with the Internal Revenue Service. On March 20, 1996, Rumsavich traveled to Tel–Save's headquarters in Pennsylvania, where he and Daniel Borislow, Tel–Save's CEO, negotiated a compromise. Borislow initially offered Rumsavich a net payment of $30,000; Tel–Save would forgive recoupment of advances paid, and Rumsavich would give up commissions on his clients' future purchases. Further negotiations on March 21 led Rumsavich to accept $120,000, which he thought would be enough to pay off his back taxes; but after a phone call to his wife Rumsavich told Borislow that $140,000 would be necessary. Borislow agreed to that amount; a settlement contract (drafted by Tel–Save's counsel and faxed from Washington, D.C.) was signed by Rumsavich and Borislow, and notarized by Kristina Tecce. Tel–Save disbursed the $140,000, and that should have been the end of the parties' dealings.

It was not. Rumsavich soon demanded payment of the following note, which he testified was prepared by Tel–Save and signed contemporaneously with the $140,000 settlement agreement:

ADDENDUM TO AGREEMENT
DATED 03/21/96

I, Dan Borishow, agree to pay Peter J. Rumsavich, personally, an additional seven hundred

eighty-five thousand dollars ($785,000). This amount is to be paid after my secondary offering or no later than the close of business Monday, April 22nd.

Mr. Rumsavich solicited and was successful in bringing in the following partitions [customers] to Tel Save: Mr. Joseph Pollack of Virginia, Mr. Ben Hopkins and Dave Moody of Denver, Colorado, Mr. Martin Gilmore, of Chicago, IL, Mr. James McGuire of Clearwater, FL, Mr. Merle Wooley of Springfield Missouri, Mr. Henry Rodriguez of Tampa FL.

Total traffic for all partitions listed was of three Million dollars ($3,000,000) prior to Tel Save's first stock offering.

Borislow testified that he had not signed (or even seen) this document; Tecce testified that she had not notarized Borislow's signature on it. An expert analyzed Tel–Save's word processing system and concluded that the document had not been prepared on its computers. After a bench trial the district judge credited this testimony, disbelieved Rumsavich's contrary testimony, and concluded that the document "is a blatant forgery—a patently fabricated product". The district judge gave multiple reasons (in addition to Borislow's testimony) for this conclusion. This is an abbreviated list:

- The document misspells Borislow's name as "Borishow", unlikely for a document prepared by Tel–Save's staff.
- The document gives Tel–Save's name as "Tel Save"–something Tel–Save's staff never did, but which Rumsavich repeatedly did in correspondence he sent to Tel–Save.
- The document's typeface, a proportional font in the Times family, was never used by Tel–Save's staff; the firm always prepared documents in a monospaced face such as Courier. Documents known to have been prepared by Rumsavich, however, use the Times font.
- The document is not an original but is a copy on the back side of the fax cover sheet transmitting the settlement agreement. This implies that it was produced by a photocopier rather than a laser printer, as would have been the

case had Tel–Save's staff prepared it on March 21. (The district judge observed that Tel–Save's staff, which lacked manual typewriters and produced documents exclusively on laser printers, was unlikely to have removed the plain paper from its printer and inserted a used fax cover sheet for the purpose of producing a contract.)

- The document purports to create a personal debt from Borislow to Rumsavich, an unlikely way to settle Tel–Save's corporate obligation to a sales agent.
- Rumsavich sent the "addendum" to Borislow via Borislow's assistant Thomas, and told Thomas to look at Borislow's face when he saw it. The district judge remarked: "That comment is clearly more consistent with a document that would come as a total surprise to Borislow ... than with a document that was already known to Borislow and was now sought to be enforced". Thomas characterized Borislow's reaction as one of astonishment.

The district judge might have added that the sheer sloppiness of this "addendum"—which on top of informality ("Dan Borishow") and spelling errors uses inconsistent punctuation and abbreviation, and contains grammatical and capitalization blunders ("traffic for all partitions listed was of [sic] three Million [sic] dollars")—is unlikely for an $800,000 commitment. The promise to pay Rumsavich $140,000 was carefully negotiated, prepared by counsel, and executed with formality; Borislow was unlikely to throw in an extra $785,000 via a slapdash document on the back of a fax cover sheet. According to Rumsavich, on March 20 Tel–Save promised to pay him a total of $925,000, some immediately (to handle tax problems) and some deferred. If that were so, then counsel would have prepared a single package to be signed on March 21; there is no accounting for the differences between the professionally prepared $140,000 settlement and the $785,000 "addendum". The district judge concluded that Rumsavich ginned up the text on his own word processing equipment, cut Borislow's signature and Tecce's notarization from

a different document, added the date in his own handwriting, and photocopied the pastiche to create the "addendum".

Rumsavich's appeal takes issue with none of this. Borislow's testimony, which alone is enough to support the judgment given the district judge's finding that it is credible, goes unmentioned. The spelling and grammar errors, the details of typeface and production that all but exclude the possibility of the document's being genuine—all of this Rumsavich now ignores. Instead he concentrates fire on the district court's Finding 15, which concluded that Rumsavich gave the game away on the witness stand. Rumsavich testified that Tel–Save agreed to pay him a total of $925,000, and that the "addendum" had been prepared by Tel–Save's staff while Rumsavich was off calling his wife. Because the pre-call settlement payment was to be $120,000, this implied an additional figure of $805,000. Only when the settlement was increased to $140,000 by handwritten interlineation after the call would a $785,000 "addendum" add up to $925,000. The judge concluded that this shows that Rumsavich forged the $785,000 document and later "concocted a story that he thought matched up with the completed documents. But as witnesses frequently do when they create a tissue of lies that have to be kept straight, Rumsavich slipped when he missed the significance of what has been explained here." On appeal Rumsavich calls Finding 15 clearly erroneous, asserting that he did not see the "addendum" until after telling Borislow that he needed an immediate $140,000 to resolve his tax difficulties, and that Tel–Save's staff then prepared the $785,000 "addendum" when Rumsavich stepped out of the room a second time. Maybe; the tale is physically possible; but it does nothing to render the district court's conclusion clearly erroneous. See *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Even if we disregarded Finding 15, the rest of the district court's findings would remain more than sufficient. Rumsavich seems to believe that if a single finding in a lengthy opinion is incorrect, the case must be tried anew. That is nonsense. One can imagine situations in which correcting a single error is like pulling a thread that unravels a garment, but the district court's other findings are independent of Finding 15. One can imagine situations in which an error, albeit logically unrelated to the other findings, reveals a cast of mind incompatible with dispassionate decisionmaking. *In re Crivello*, 134 F.3d 831, 840–41 (7th Cir.1998), was such a case, and Rumsavich says that this is another. A conclusion that the plaintiff is a perjurer (which is what Finding 15 says) is bound to color remaining findings, Rumsavich insists. That argument could carry some weight if Finding 15 were the *only* basis on which the district judge found that Rumsavich is a liar. But the judge gave more than a dozen other reasons, some of which we have recounted and all of which Rumsavich disregards. Not for one second do we believe that the judge would have found in Rumsavich's favor had Rumsavich testified that the deal was for $905,000, avoiding the inconsistency noted in Finding 15. If this conclusion is an error, it is harmless. Fed.R.Civ.P. 61.

■ A decision based on findings about the credibility of witnesses—as this was—is impossible to upset on appeal unless documentary or other objective evidence contradicts the credibility ruling. *Anderson*, 470 U.S. at 575, 105 S.Ct. 1504; *Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 530 (7th Cir.1998). In this case the objective evidence strongly supports the credibility ruling. So the appeal had no hope of success—is, in a word, frivolous. "An appeal is 'frivolous' when the result is foreordained by the lack of substance to the appellant's arguments." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc). Attempts to reargue credibility determinations fall within this category. E.g., *In re Generes*, 69 F.3d 821, 828 (7th Cir.1995); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir.1993); *Machinists District No. 8 v. Clearing*, 807 F.2d 618, 622–23 (7th Cir.1986). *Mars Steel* stressed that even when the appeal is frivolous, an award of sanctions under Fed.R.App.P. 38 remains an exercise of discretion. Rumsavich's case appears to be a

suitable one for sanctions: the appeal is objectively frivolous, and it comes at the end of a lawsuit that the district judge found to be based entirely on fraud and perjury. It is hard to see why Borislow should be out of pocket, at the end of such litigation, the amount required to pay counsel to defend him. Perhaps, however, Rumsavich and his lawyers have some justification for their conduct, and so we grant them 14 days to show cause why sanctions should not be imposed under Rule 38. During that time appellees should file a statement of the costs and attorneys' fees reasonably incurred in defending the appeal.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED.