**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**INSURANCE CONSULTANTS OF KNOX, INCORPORATED, and Marvin D. Miller, Defendants–Appellants.**

**No. 98–4173.**

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1999.

Decided Aug. 18, 1999.

Charles E. Brookhart, Robert L. Baker (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, for Plaintiff–Appellee.

Henry R. Hart (argued), Granger, IN, Marvin D. Miller, Knox, IN, for Defendants–Appellants.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Marvin Miller is a tax protester who has appeared before this court, federal district court, or United States Tax Court in tax matters on seven occasions over the last fifteen years. In the course of an investigation into Miller's tax liabilities for 1991–1996, the Internal Revenue Service ("IRS") issued two summonses directing production of various corporate documents relating to his financial transactions. One summons was issued to Insurance Consultants of Knox, Inc. ("ICKI"), whose principal place of business is in Knox, Indiana, and the other was issued to Miller as Secretary/Treasurer of ICKI. Neither ICKI nor Miller complied with these summonses, lodging various objections instead, and the IRS petitioned for enforcement. The district court granted the petition, and the defendants appeal on the grounds that: (1) enforcement would violate Miller's Fifth Amendment rights against self-incrimination, (2) production of the documents requested cannot be compelled because they are already in the possession of the IRS, and (3) the summonses gave inadequate notice. We affirm and order the defendants to show cause why sanctions should not be imposed for filing a frivolous appeal.

The first summons was issued on February 11, 1997 and served on ICKI by IRS Special Agent Sylvia Arment by personal in-hand service to Miller as ICKI's representative at 12 noon on that date. It directed ICKI to produce books, account records, papers, and other data relating to Miller's financial situation for 1991–1995. The summons stated that ICKI was to appear with the documents at the IRS office in Merrillville, Indiana, on February 21, 1997 at 11 in the morning. Miller responded with a letter dated February 12, 1997 which demanded proof of Ar-

ment's identity and authority and raised several objections to the summons. When the IRS wrote Miller on February 14 identifying the legal basis for the summons, Miller replied in a letter of February 17 that the agency had failed to produce proper authority for the summons and that he would not consider himself bound to comply unless the agency provided satisfactory proof of that authority by February 20, but that the IRS might apply to him for additional time to comply with his requirements. ICKI did not appear on February 21 and has not produced the documents demanded in the summons.

On February 25, the IRS issued a second summons, demanding the same documents and information, this time directed to Miller as Secretary/Treasurer of ICKI, which was served by leaving it at Miller's residence. It directed Miller to appear at the IRS office on March 10, 1997 with the materials described in the summons. Miller once more demanded proof of Arment's authority, raised objections to the summons, and failed to comply in any respect.

The IRS then petitioned for enforcement of the two summonses. In support of its petition, the government filed an affidavit from Arment stating that the information was sought in connection with an inquiry into Miller's tax liabilities for 1991–1995. (The inquiry was later extended to include 1996 as well.) The district court ordered Miller and ICKI to show cause why compliance should not be enforced. It struck the pleadings Miller submitted on ICKI's behalf on the grounds that Miller could not represent ICKI because he was not an attorney. The district court also referred the case to a magistrate judge for an evidentiary hearing, which was held on June 12, 1998, Miller appearing *pro se* and ICKI being represented by counsel. The magistrate judge recommended that Miller's and ICKI's arguments be rejected and that the petition enforcing the summons be granted. In October 1998, the district court so ordered in a memorandum and order that adopted

the magistrate judge's recommendations. This appeal followed.

As we stated the last time we had occasion to consider Miller's refusal to comply with an IRS summons, we review a district court's determination of whether the factual conditions for enforcement of a summons have been met for clear error. *Miller v. United States*, 150 F.3d 770, 771 (7th Cir.1998). Whether enforcement of the summons would violate Miller's Fifth Amendment privilege against compelled self-incrimination is a mixed question of law and fact. *See United States v. Medlin*, 986 F.2d 463, 466 (11th Cir.1993). We review the district court's factual findings for clear error and the application of law to those facts de novo. *See id.*

The IRS is authorized to issue summonses to determine the liability of any person for any internal revenue tax, among other purposes. *See* 26 U.S.C. § 7602. A district court may compel compliance with an IRS summons. *See id.* § 7402(a) & (b). To obtain enforcement of a summons, the government must show that: (1) the investigation is being conducted for a legitimate purpose; (2) the information sought is relevant to the investigation and (3) not already in the government's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *See United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The *Powell* requirements impose only a "minimal burden" on the agency. *Miller*, 150 F.3d at 772. They can usually be satisfied by an affidavit stating that the government has met them. *Id.; see United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir.1993). Once the government meets this prima facie burden, the taxpayer faces a " 'heavy burden' to either present facts to disprove one of the *Powell* factors, or to show that the IRS issued the summons in bad faith." *Miller*, 150 F.3d at 772 (internal citations omitted); *see also United States v. LaSalle National Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). The taxpayer can rebut the government's prima facie case only by alleging "specific facts" in rebuttal. *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir.1999); *United States v. Kis*, 658 F.2d 526, 543 (7th Cir.1981).

Here, Arment's affidavit established the government's prima facie case. The defendants have four arguments in rebuttal. First, Miller argues on his own behalf that enforcement of the summonses would violate his Fifth Amendment rights against compelled self-incrimination because he has a personal privilege not to incriminate himself. Miller acknowledges that ICKI, a corporation, has no Fifth Amendment right to refuse to produce documents in the face of a valid summons. *See Braswell v. United States*, 487 U.S. 99, 105, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) (collective entities lack Fifth Amendment privilege); *Hale v. Henkel*, 201 U.S. 43, 75, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (corporation is not a "person" for purposes of the privilege against self-incrimination), overruled in part on other grounds by *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Miller concedes that a custodian of corporate records cannot rely on a personal privilege against self-incrimination to avoid producing corporate documents which are in his possession in a representative capacity even if those documents might incriminate him. *See Braswell*, 487 U.S. at 108, 113–14, 118–19, 108 S.Ct. 2284; *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

However, Miller asserts that he has a personal privilege against compelled self-incrimination. He further avers that in striking Miller's pleading on behalf of ICKI, the district court did not consider whether Miller himself could assert his own Fifth Amendment privilege. He contends that it does not follow that he himself lacks a personal interest in the privilege merely because he appears in his representative capacity. This proves far

too much, however. If Miller could refuse to comply with the summons issued to him as custodian of documents because he has a personal interest in not incriminating himself, *Braswell* and the entire line of cases that establish the collective entity doctrine, going back 93 years to *Hale*, would be overruled. Needless to say, that is not feasible. Even if Miller could assert a personal interest, the Fifth Amendment privilege against self-incrimination which exists for private papers would not protect individuals against being forced to produce records required by law, *see Shapiro v. United States*, 335 U.S. 1, 17, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), like most of those demanded in the summonses here. The district court did not abuse its discretion in striking the pleading. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir.1994) (standard of review for district court decision to strike unauthorized pleadings).

■■■■ Second, Miller and ICKI argue that enforcement of the summonses would violate Miller's Fifth Amendment rights in requiring him to give self-incriminating oral testimony. ICKI cannot assert Miller's privilege against self-incrimination, so we consider only Miller's argument on his own behalf. Miller says that the Supreme Court has drawn a line "between oral testimony and other forms of incrimination." *Braswell*, 487 U.S. at 114, 108 S.Ct. 2284. Even when a custodian of corporate documents must produce records which incriminate him, " 'he cannot lawfully be compelled ... [without immunization] to condemn himself by his own oral testimony.' " *Id.* (internal citations omitted). Because the summonses in dispute here direct Miller to "give testimony *and* produce for examination" various records (emphasis added), Miller claims that the prohibition against compelled *oral* testimony which might incriminate him means that his personal Fifth Amendment

privilege extends to the production of *corporate documents* of which he is the custodian and which might incriminate him. The non sequitur is manifest. The summonses direct Miller in his representative capacity to produce certain records, which he has failed to do. Should he be asked to give oral testimony which might incriminate him, we would face different questions which are not presented here.[1] *See, e.g., Holifield v. United States*, 909 F.2d 201, 204 (7th Cir.1990) (privilege must be asserted on a question-by-question, document-by-document basis; "blanket claim" of privilege is "unacceptable"). As custodian of the documents, then, Miller must produce corporate records which are legitimately summonsed even if they incriminate him.

■■■■ Miller and ICKI's third argument is that the government has failed to satisfy the *Powell* requirement that the records demanded not already be in possession of the IRS. *See* 379 U.S. at 57–58, 85 S.Ct. 248. The defendants say that ICKI has filed corporate tax returns for all the years in question in which it has reported any required information pertinent to Miller's personal compensation, and so the IRS already has the information it seeks. This is incorrect. The Supreme Court clearly held in *Powell* that the showing of abuse of process necessary to quash an administrative summons must be "predicated on more than the fact of re-examination." 379 U.S. at 51, 85 S.Ct. 248. Even if the IRS had requested only copies of ICKI's corporate tax returns, they would not be precluded from demanding these again. *See Spell v. United States*, 907 F.2d 36, 38 (4th Cir.1990) (Taxpayer may not refuse to produce records merely because his returns have been once previously examined.); *United States v. Lang*, 792 F.2d 1235, 1242 (4th Cir.1986) (permitting a "second look" for a "different and additional purpose"), abrogated on other grounds

---

**1.** Miller concedes that he may be compelled to orally identify and authenticate the docu-

ments specified in the summonses.

by *Braswell,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *United States v. Texas Heart Inst.,* 755 F.2d 469, 476–77 (5th Cir.1985) (rejecting argument that IRS "possesses" information simply because it has previously seen the summoned documents), overruled on other grounds by *United States v. Barrett,* 837 F.2d 1341, 1351 (5th Cir.1988).

Moreover, the IRS requested a great deal more information which was not necessarily included in the records which defendants allege the IRS already possesses. The government requested all corporate bookkeeping records, inventory records, records of any and all compensation made to Miller, records reflecting corporate stock ownership, savings and checking account records, and loan records, all in both hard copies and magnetic media. The defendants have therefore failed to carry their burden of showing that *Powell* has not been satisfied.

■■■■ The defendants' fourth and final argument is that the first summons was unenforceable because the IRS failed by one hour to give the ten days notice required by 26 U.S.C. § 7605(a) ("The date fixed for the appearance ... shall be not less than 10 days from the date of the summons."). The summons was served at 12 noon on February 11, 1997 and required an appearance at 11 a.m. on February 21, 1997. The defendants contend that this summons was invalid and the district court lacked subject matter jurisdiction to enforce it. The purpose of the notice period, however, is to allow a defendant to exercise his right to dispute the summons, *see, e.g., Sylvestre v. United States,* 978 F.2d 25, 28 (1st Cir.1992), or to produce the requested information in compliance. Had the statute explicitly provided for a notice period of 240 hours or ten *full* days, we might decide otherwise, but the statutory term "days" in the notice period will bear the interpretation "during business hours." Unless the taxpayer can show that he is prejudiced by notice of less than ten full days because the deficit disabled him from

disputing the summons or producing the requested information, notice to appear any time during business hours of the tenth day constitutes sufficient notice for purposes of § 7605(a). Because the defendants do not assert that they were so prejudiced and because they do not dispute the validity of the second summons, the hour in dispute with respect to the first summons does not render that summons unenforceable.

■■■■ Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous " 'when the result is foreordained by the lack of substance to the appellant's arguments,' " *Rumsavich v. Borislow,* 154 F.3d 700, 703 (7th Cir.1998) (internal citations omitted) or when the appeal "merely restates arguments that the district court properly rejected." *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.,* 956 F.2d 1399, 1406 (7th Cir.1992) (internal quotation and citation omitted). We at times have also required some evidence of bad faith before finding that sanctions should be imposed. *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 331 (7th Cir.1995). Sanctions certainly are justified if the appeal was "prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay, harassment, or out of sheer obstinacy." *Flexible Mfg. Sys. Pty., Ltd. v. Super Products Corp.,* 86 F.3d 96, 101 (7th Cir.1996). Our standard sanction in a routine tax protester case is $2,000. *See Cohn v. Commissioner of Internal Revenue,* 101 F.3d 486, 487 (7th Cir.1996).

■■■ This case fits the bill. The result in this case was foreordained because defendants' arguments were wholly without merit. Although serious challenges to deeply entrenched precedent are worthy of

consideration, the defendants made no attempt whatsoever to explain why we should reverse almost a century of caselaw on the collective entity rule. The defendants' *Powell* argument failed on its own terms, and the lack of notice argument—which, weak as it was, was in some ways the least disreputable of the lot—was beside the point because it addressed only one of two summonses both of which had the same effect. Moreover, Miller's pattern of behavior suggests bad faith, with repeated prosecution of cases for purposes of delay, harassment, or out of sheer obstinacy. He is a career tax protester whom we have already sanctioned. *See Miller v. United States*, 868 F.2d 236, 242 (7th Cir. 1988) (imposing double costs and $1,500 in sanctions). His frequent visits to the federal courts on such frivolous grounds waste our time and deprive litigants with real disputes who raise potentially meritorious arguments of an opportunity to be heard in a timely manner.

We AFFIRM the judgment of the district court and ORDER the defendants TO SHOW CAUSE within ten days why $2,000 damages and double costs ought not be awarded to the government.