In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1743, 08-1744, 08-1746, 08-1747, 08-1749 & 08-1750

SHAHID R. KHAN and ANN C. KHAN, et al.,

*Petitioners-Appellees,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 07 CV 2570, 07 CV 2571, 07 CV 2573, 07 CV 2575,
07 CV 2583 & 07 CV 2574—**Ruben Castillo**, *Judge.*

ARGUED OCTOBER 31, 2008—DECIDED NOVEMBER 20, 2008

Before FLAUM, ROVNER and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* Section 7602(d)(1) of the Internal Revenue Code states: "No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person." Interpreting this statute, the district court quashed an IRS summons seeking

the testimony of Robert Greisman, CPA in connection with an investigation and audit of petitioners' tax returns. The IRS would not reveal whether it had referred Greisman to the Department of Justice because of his involvement in petitioners' matter.

On appeal, we consider whether § 7602(d)(1) only bars the IRS from summoning taxpayers whose liabilities are at issue and who have been referred to the Justice Department, or whether it also bars the IRS from summoning a third party witness referred to Justice. The IRS Commissioner issued a regulation interpreting the statute as quashing summonses only when there is a Justice Department referral of the person whose tax liability is at issue. Because the IRS Commissioner promulgated this regulation, we evaluate the statute within the *Chevron* framework. For the reasons explained below, we conclude that the statute is ambiguous and the Treasury Regulation is reasonable, and we reverse the district court's holding.

## I. Background

The IRS is examining Shahid and Ann Khan's federal tax returns for the 1999 through 2003 tax years. It also is examining the tax returns of five entities in which Shahid Khan was a common partner, member, or owner: Uviado, LLC; SRK Wilshire Partners, LLC; KPASA, LLC; Jonction, LLC; and SRK Wilshire Investors, LLC ("the entities"). In an affidavit provided by the government, the IRS revenue agent assigned to the case, Larry Weinger, attested that it appeared that the Khans and their entities engaged in

at least five transactions that the IRS identified as potentially abusive tax shelters. Weinger stated that "taxpayers appeared to have sheltered approximately $250 million in income over the years at issue, reducing their federal income tax liability by approximately $85 million."

Robert Greisman was an accountant and attorney at the BDO Seidman accounting firm ("BDO"). He was a member of BDO's Tax Solutions Group and an expert in tax shelters. In his affidavit, Weinger stated that Greisman had met with the Khans, provided them with accounting and professional services, and "may have been involved with the execution of the tax shelter transactions during the periods under examination." He said that the petitioners paid BDO $8.5 million in fees that they claimed as expenses on their returns, but that during an interview Shahid Khan was unable to identify what services BDO provided. Khan also was unable to answer many of Weinger's other questions, and he directed Weinger to ask BDO for responsive information.

Based on Weinger's investigation, the IRS issued six summonses to Greisman on April 16, 2007. The summonses sought Greisman's testimony in connection with the IRS investigation of the tax liability of the Khans and their five entities. They required that Greisman appear before Weinger on May 22, 2007.

On May 7, 2007, the petitioners filed petitions to quash the summonses. The petitions were consolidated into one case. Petitioners initially argued that the summonses should be quashed for seven reasons: (1) Greisman's testimony was protected on the grounds of the work

product, attorney-client, and tax practitioner privileges; (2) the summonses were barred under res judicata or collateral estoppel; (3) the IRS already possessed all of Greisman's unprotected information; (4) Greisman's testimony was irrelevant because the IRS had reached its audit conclusion already; (5) the summonses improperly sought to circumvent an order in a separate case involving the same parties; (6) the summonses were overly broad and onerous; and (7) the summonses lacked a good faith basis.

The government filed an opposition to the petition to quash, and the United States also moved to enforce the summonses. This motion was accompanied by Weinger's affidavit. Weinger stated that the purpose of the IRS's examination was "to ascertain the correctness of the Khans' tax returns and to determine the Khans' correct federal tax liabilities for the periods in issue." He said Greisman's testimony might shed light on the losses reported on taxpayers' 1999-2003 tax returns and the $8.5 million in fees deducted from taxpayers' income for those years. He combated the various arguments that petitioners made in their petition to quash.

Petitioners, with their reply to the United States' opposition to the petition to quash, filed an opposition to the United States' motion for enforcement of the summonses. They reiterated many of the same arguments addressed in their opening petition. They also argued for the first time that the summonses violated 26 U.S.C. § 7602(d)(1) because the declaration of the revenue agent supporting the United States' motion for enforcement did not state

whether the IRS had referred Greisman to the Justice Department. A Justice Department referral is in effect "[w]ith respect to any person if (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person." 26 U.S.C. § 7602(d)(2)(A). Petitioners argued that a criminal referral might be in effect for Greisman. In the absence of a statement from the IRS that Greisman was not the subject of a referral, they argued that § 7602(d)(1) barred the IRS from summoning Greisman, a third party witness. Petitioners requested that the district court require the government to disclose Greisman's referral status.

The government, focusing on the language of § 7602(d)(1), responded that the referral provision only bars the IRS from summoning a person whose tax liability is being examined and who has been referred to the Justice Department. The government also pointed to the federal regulation to argue that the IRS Commissioner interpreted the statute to apply to the taxpayer under examination only, and not to a third party. *See* 26 C.F.R. § 301.7602-1(c)(1).

Additionally, the government stated that 26 U.S.C. § 6103 prohibited it from disclosing whether a Justice Department referral was in effect with respect to Greisman.

Section 6103 mandates that tax returns and return information shall be kept confidential. "Return information" includes "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing . . . with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A). The government argued that disclosing whether it had referred Greisman to the Justice Department would fall within this definition, as it would reveal the possible existence of his liability for a penalty, fine, or offense in the matter of the tax shelters at issue in this litigation.

The district court in this case quashed the summonses issued by the IRS. The court focused on the words "any person" in the statute to hold that the referral language is not limited to the taxpayer being investigated. The court stated that it was incumbent upon the government to ensure that it had not referred Greisman to the Justice Department. The court found an exception to § 6103(b)(2)(A) that would allow the government to reveal whether it had referred Greisman. Section 6103(h)(4)(c) allows disclosure of a third party's return information where it "directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." The court found that Greisman's potential liability was "directly related" to resolution of an issue in this action, which it identified as the use of potentially abusive tax shelters.

Because the government refused to disclose whether a referral was in effect, the court determined that the summonses must be quashed.

## II. Discussion

The United States appeals the district court's ruling. It argues that the plain meaning of the statute should resolve the case in its favor. In the alternative, it argues that if we find § 7602(d)(1) to be ambiguous on the question at issue, "the regulation implementing § 7602(d)(1) leaves no doubt as to the correctness of the Government's position." We review a district court's determination of whether the factual conditions for enforcement of an IRS summons have been met for clear error, and we review legal conclusions de novo. *United States v. Ins. Consultants of Knox*, 187 F.3d 755, 759 (7th Cir. 1999).

Section 7602 of the Internal Revenue Code grants the IRS "broad power" to issue summonses to investigate violations of the tax code. *Miller v. United States*, 150 F.3d 770, 772 (7th Cir. 1998). The statute, which was amended by Congress in 1982, authorizes the Secretary of the Treasury to examine books and records, issue summonses and take testimony for the purposes of "ascertaining the correctness of any return, making a return where none has been made; [or] determining the liability of any person for any internal revenue tax . . . ." 26 U.S.C. § 7602(a). We have recognized the IRS summons power as "vital to the efficacy of the federal tax system, 'which seeks to assure that taxpayers pay what Congress has mandated and to prevent dishonest persons from

escaping taxation thus shifting heavier burdens to honest taxpayers.' " *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003) (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)).

If a summoned party refuses to testify pursuant to a summons, the United States may seek judicial enforcement. *See* 26 U.S.C. §§ 7402(b), 7604. To enforce a summons, the United States need only make an initial showing that: (1) the summons was issued for a legitimate purpose; (2) the summoned data may be relevant to that purpose; (3) the data is not already in the Government's possession; and (4) the administrative steps required by the Internal Revenue Code for issuance and service have been followed. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). In addition, the United States must not violate provisions of § 7602, including § 7602(d)(1), designed to ensure the summons is issued in good faith. The taxpayer faces a "heavy" burden to overcome the government's prima facie case. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978).

This case presents a question of first impression concerning the meaning of § 7602(d)(1). Our first task is to identify the proper framework in which we will evaluate the question. As mentioned, the IRS Commissioner promulgated a regulation to interpret the statutory language at issue. The Commissioner promulgated the regulation pursuant to the Congressional grant of general rulemaking authority reflected in 26 U.S.C. § 7805(a). We review general authority tax regulations under the criteria articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837 (1984). *Bankers Life & Casualty Co. v. United States*, 142 F.3d 973, 982-83 (7th Cir. 1998).

*Chevron* calls for a two-step inquiry. First, we look to the language of the pertinent statutory provision. "If the plain meaning of the text either supports or opposes the regulation, then we stop our analysis and either strike or validate the regulation." *Bankers Life*, 142 F.3d at 983. In searching for a plain meaning, we should "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted). Proper statutory construction requires considering "not only the bare meaning of a word but also its placement and purpose in the statutory scheme." *Bailey v. United States*, 516 U.S. 137, 145 (1995).

If the statutory language is either silent or unclear on the point at issue, we proceed to *Chevron*'s second step: We assess the reasonableness of the Commissioner's regulation. *Bankers Life*, 142 F.3d at 983. "If the regulation is a reasonable reading of the statute, we give deference to the agency's interpretation." *Id.* Our authority at this second step of the analysis is therefore limited. It is not our role to determine the most appropriate interpretation of the statute, but simply to assess whether the regulation reflects a reasonable construction. *Chevron*, 467 U.S. at 843 n.11. For "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *United States v. Correll*, 389 U.S. 299, 307 (1967) (quoting 26 U.S.C. § 7805(a)).

Starting with *Chevron*'s step one, then, we consider whether there is a plain meaning, as to the question at

issue, of the phrase "[n]o summons may be issued, . . . with respect to any person if a Justice Department referral is in effect with respect to such person." The government argues that the text of § 7602(d)(1) demonstrates that the referral provision applies only to the taxpayer whose liabilities are being investigated, and that it does not apply to a third party witness like Greisman. The government focuses on the words "with respect to" to argue that a summons is issued *to* a witness, but *with respect to* the investigation of a particular taxpayer. It claims that the district court improperly construed the words "[n]o summons may be issued . . . *with respect to* any person" to mean "[n]o summons may be issued . . . *to* any person." In this case, while the summonses were issued *to* Greisman, the government argues that they were issued *with respect to* the tax liabilities of the Khans and their entities. The government also argues that a conclusion that the summonses here were "issued 'with respect to' Greisman, presumably on the assumption that a summons is issued 'with respect to' whomever it is addressed, renders the terms 'with respect to' and 'any person' redundant." Because the IRS did not refer the Khans or their entities to the Justice Department, the government argues that § 7602(d)(1) does not bar the IRS from summoning Greisman.

Petitioners combat the government's characterization of the "with respect to" language. They claim that only the general prepositional phrase "with respect to" carries the flexibility to encompass both the summoned witness and the taxpayer under audit within the "any person" universe.

Petitioners also focus on the words "any person" in arguing that § 7602(d)(1) protects both the taxpayers whose liabilities are under investigation and third party witnesses. They note that § 7602(d)(2) also employs the "any person" language, but that § 7602(a)(2) references "the person liable for tax." Thus, they say Congress consciously drew a distinction. And they point out other distinctions to argue that whenever Congress wished to specify a universal, indefinite, or narrow prepositional object, it said so. Compare 26 U.S.C. §§ 7602(d)(1) ("with respect to *any person*") and (d)(2)(B) ("with respect to *a person*") with (c)(1) ("with respect to the determination or collection of the tax liability of *such taxpayer*") (emphasis added in each example).

But the government argues that reading § 7602(d)(1) *in pari materia* with § 7602(d)(3) leads to the conclusion that the referral provision of § 7602(d)(1) applies only to the taxpayer whose liability is the subject of the investigation. Section 7602(d)(3) provides that, with respect to the summons at issue, each taxable period or taxable event and each tax "shall be treated separately." The government argues that, for summons purposes, tax liability is treated separately from the witness's own civil or criminal liability, so a conclusion that the summons can be enforced only if there is no Justice Department referral in effect with respect to Greisman conflicts with § 7602(d)(3). In other words, the government argues, "if a referral were in effect with respect to Greisman's involvement in promoting abusive tax shelters, that would be a separate liability under § 7602(d)(3), and cannot defeat the summons issued with respect to Khans' income tax liabilities."

We begin with petitioners' arguments. We find some-
what appealing petitioners' argument that Congress's
use of narrow objects of the prepositional phrase "with
respect to" elsewhere in the statute evidences that it
would have employed an object more narrow than "any
person" in this provision if it had wanted to do so.
Section 7602(a)(2) specifies "the person liable for tax" and
§ 7602(c)(1) specifies "any person other than the tax-
payer." In light of these other provisions, the "any person"
language from § 7602(d)(1) could plausibly refer to both
taxpayers and third party witnesses. Moreover, the fact
that the statute employs the phrase "with respect to" in
§§ 7602(c)(1)-(2)—like it does in the section at issue in
this case—but specifies "taxpayer" as the object in both
instances supports petitioners' argument. If the statute
specifies the "taxpayer" as the object in Section (c), and
then specifies "any person" as the object in Section (d), it
is plausible to interpret Section (d) as barring an IRS
summons when a Justice Department referral is in effect
not just for the taxpayer, but for anyone that the IRS can
summon. Of course, if these arguments led us to a "plain
meaning" of the statutory provision as to the question
at issue here, we would stop our analysis and affirm
the district court. We would not proceed to the second
prong of *Chevron*.

However, while petitioners' argument has some persua-
sive value, we must closely analyze § 7602(d)(1)'s use of
the phrase "with respect to" as well. Synonyms for "with
respect to" include "pertaining to" and "concerning."
*Encarta World English Dictionary* (2007). When we replace
"with respect to" in § 7602(d)(1) with "concerning," for

example, the statute reads in relevant part: "no summons may be issued . . . *concerning* any person if a Justice Department referral is in effect *concerning* such person." Replacing "with respect to" with "concerning" illuminates the persuasiveness of the government's interpretation of the statute to mean that the referral at issue applies only to the taxpayer whose liabilities are being investigated, and not to a third party witness. Moreover, the government's argument that § 7602(d)(3) undermines petitioners' interpretation of the statute (because the IRS cannot know which taxable period or event forms the basis of the third party referral) bolsters its interpretation. The government's interpretation of the statute is also plausible.

Despite each side's best efforts to demonstrate that the statute has a plain meaning that supports its argument, we conclude that while both interpretations have some merit, there is no clear winner. When we focus on context, the petitioners' interpretation seems persuasive; when we focus on the ordinary meaning of "with respect to," the government's argument seems superior. The inability to decipher "plain" meaning leads to the conclusion that the statute is unclear and ambiguous regarding the issue in this case. When there are two plausible but different interpretations of statutory language, there is ambiguity.

Finding ambiguity, we proceed to *Chevron*'s second step. We defer to the IRS Commissioner's interpretation of the statute if it is reasonable. We must determine whether the regulation "harmonizes with the language, origins, and purpose of the statute." *Banker's Life*, 142 F.3d at 983. In this step, we can take into account extrinsic sources such as legislative history.

The regulation implementing § 7602(d)(1) states:

> The Commissioner may neither issue a summons under this title nor initiate a proceeding to enforce a previously issued summons by way of Section 7604 *with respect to any person whose tax liability is in issue*, if a Justice Department referral is in effect *with respect to that person for that liability*.

26 C.F.R. § 301.7602-1(c)(1) (emphasis added).

The government argues that this regulation stands for the proposition that an IRS summons of a third party is not barred if it has referred the third party to the Justice Department. Petitioners respond that the regulation, rather than hurting their case, simply does not address whether a summons may be enforced with respect to a third party witness subject to a Justice Department referral.

Petitioners' argument is unconvincing. The Treasury Regulation also includes five examples of the application of § 7602(d)(3)'s mandate that each tax period (or taxable event) and each tax must be treated separately for the purposes of the referral provision of § 7602(d)(1). None of the examples suggests that the referral provision can apply to third parties. In fact, this suggestion is not made anywhere in the regulation or legislative history.

The language that the Commissioner added to the regulation in interpreting the statute is clear. It confirms that, in the view of the Commissioner, § 7602(d)(1) applies only when the IRS has referred the taxpayer whose liabilities are at issue. The regulation does not bar the IRS from summoning a third party witness when it

has referred the summoned third party witness to the Justice Department.

The regulation's interpretation of the statute is reasonable and in harmony with the statute. Legislative history supports this interpretation as well. The Senate Committee on Finance's report that accompanied the legislation explains: "Under the bill, the Secretary may not issue any summons or commence any action to enforce a summons if a Justice Department referral is in effect *with respect to the person whose tax liability is in issue*." S. Rep. No. 97-494, at 286 (1982) (emphasis added). There is no evidence that Congress intended to expand this statute to a summoned third party, such as Greisman, when a Justice Department referral has been issued for the third party witness.

We defer to the Treasury Department regulation. We hold that the IRS can summon Griesman in the investigation of petitioners even if the IRS referred him to the Justice Department concerning petitioners' tax liabilities.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's holding.