# United States Tax Court

163 T.C. No. 4

VARIAN MEDICAL SYSTEMS, INC. AND SUBSIDIARIES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 8435-23.                                        Filed August 26, 2024.

————————

I.R.C. § 245A, which was enacted by the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, § 14101, 131 Stat. 2054, 2189 (2017), provides a deduction (DRD) for certain dividends received by a U.S. corporation from certain foreign corporations. Given its formulation, the DRD had the potential to interact with existing I.R.C. § 78. As in effect before the TCJA, I.R.C. § 78 provided that, for taxpayers who claimed foreign tax credits, a specified amount "shall be treated for purposes of this title (other than [I.R.C. §] 245) as a dividend received by such domestic corporation from the foreign corporation." TCJA amended I.R.C. § 78 to provide that amounts treated as dividends under I.R.C. § 78 do not qualify for the DRD under I.R.C. § 245A. But in certain circumstances, TCJA's amendments to I.R.C. § 78 did not take effect until a tax year starting after I.R.C. § 245A took effect.

Relying on this effective date mismatch, for fiscal year 2018, P claimed the DRD for an amount it treated as a dividend under I.R.C. § 78. In its Motion for Partial Summary Judgment, P argues that it is entitled to the DRD for this amount plus an additional amount alleged in its Petition. R disagrees in his own Cross-Motion for Partial Summary Judgment. Additionally, R argues in the alternative that, if we find P is entitled to the DRD for

amounts treated as dividends under I.R.C. § 78, then I.R.C. § 245A(d)(1) limits the foreign tax credits to which P would otherwise be entitled.

*Held*: P is entitled under I.R.C. § 245A to a deduction for amounts properly treated as dividends under I.R.C. § 78 for its 2018 tax year.

*Held, further*, Treas. Reg. § 1.78-1 does not alter this conclusion because it cannot contravene the clear statutory text.

*Held, further*, I.R.C. § 245A(d)(1) disallows foreign tax credits to the extent they are attributable to amounts P properly treats as dividends under I.R.C. § 78 and deducts under I.R.C. § 245A.

*Held, further*, P's Motion will be granted in part, and R's Motion will be granted in part.

————————

*Jean A. Pawlow, Andrew C. Strelka, Eric J. Konopka*, and *Alexandra B. Clionsky Kelly*, for petitioner.

*Andrew M. Tiktin, David J. Berke, Meenu Kapai, Usha Ravi*, and *H. Clifton Bonney, Jr.*, for respondent.

OPINION

TORO, *Judge*: We must address in this deficiency case two questions of first impression: (1) how do two effective date provisions enacted by the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017), and an existing provision of the Internal Revenue Code (section 78)[1] interact and (2) how does a new Code provision

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

enacted by the TCJA (section 245A) actually apply? We answer both questions by following the plain text of the relevant provisions.

Congress enacted the TCJA in 2017. Among other things, the TCJA added to the Code new section 245A, which allows a domestic corporation a deduction for certain dividends received from foreign subsidiaries. Section 245A applies to "distributions made after . . . December 31, 2017." TCJA § 14101(f), 131 Stat. at 2192.

Because the deduction under section 245A applies to dividends received by a domestic corporation from a foreign corporation, it had the potential to interact with existing section 78. As in effect before the adoption of the TCJA, that section provided that, for taxpayers who claimed foreign tax credits, a specified amount "shall be treated for purposes of this title (other than section 245) as a dividend received by such domestic corporation from the foreign corporation."

Recognizing that section 245A might otherwise allow a taxpayer who claims foreign tax credits to deduct a dividend that section 78 would have deemed the taxpayer to receive, the TCJA amended section 78 to preclude that result. But, instead of using the same effective date that it applied to section 245A, the TCJA amended section 78 for "taxable years of foreign corporations beginning after December 31, 2017, and . . . taxable years of United States shareholders in which or with which such taxable years of foreign corporations end." TCJA § 14301(d), 131 Stat. at 2225.

For some taxpayers—including those with foreign subsidiaries with fiscal years (that is, foreign subsidiaries whose taxable years do not run from January 1 to December 31 of each year)—this effective date mismatch created a window during which section 245A was in effect, but the amendments to section 78 were not. The question before us is whether, during that window, section 245A provided one such taxpayer, Varian Medical Systems, Inc. (Varian), a deduction for a dividend that it was deemed to receive under section 78.

Seeking partial summary judgment, the Commissioner argues that, despite the disparate effective dates, Varian cannot claim a deduction for its section 78 dividend because section 245A permits a deduction only for dividends that are actually distributed (or treated as distributed) from earnings, and, in the Commissioner's view, section 78 dividends do not satisfy this requirement. Alternatively, the

Commissioner argues that Treasury Regulation § 1.78-1, as amended June 21, 2019, disallows the deduction.

Varian disagrees, arguing that the operative text of section 245A permits the deduction and that no other provision prohibits it. Varian also argues that Treasury Regulation § 1.78-1 is invalid because it purports to apply amended section 78 to a period starting before the effective date provided in the TCJA. It therefore seeks partial summary judgment in its favor.

Because a plain reading of the statutory text authorizes the deduction under section 245A, we will grant Varian's Motion for Partial Summary Judgment. Relatedly, we will deny the Commissioner's Cross-Motion for Partial Summary Judgment insofar as he asks us to conclude that Varian cannot claim a deduction under section 245A for any section 78 dividend.

The Commissioner also argues that, if Varian is entitled to the deduction, section 245A(d)(1) limits the amount of foreign tax credits Varian may claim. We agree with the Commissioner on this point and therefore will grant his Motion in part.

*Background*

The following facts are derived from the parties' pleadings and Motion papers. They are stated solely for the purpose of ruling on the Motions before us and not as findings of fact in this case. *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021) (reviewed).

Originally founded in 1948, Varian is the parent company of a consolidated group of medical device and software manufacturers. Its principal place of business is in Palo Alto, California.

Varian operates through corporations in many different countries, at least some of which are controlled foreign corporations (CFCs) as that term is defined in section 957(a). Varian and its CFCs are fiscal year taxpayers, meaning their taxable years do not end on December 31. *See* I.R.C. § 441(a), (d), (e). As relevant for this case, the fiscal year of Varian and its CFCs started on September 30, 2017, and ended on September 28, 2018 (2018 Year).

Varian filed a consolidated federal income tax return for the 2018 Year. On the return, Varian elected to claim foreign tax credits for foreign taxes that it was deemed to pay under section 960 and was

therefore required to "gross up" its taxable income under section 78 by reporting a dividend of approximately $159 million. Varian also claimed a deduction of approximately $60 million under section 245A in connection with the dividend it was treated as receiving under section 78 from its first tier CFCs.

The Commissioner examined Varian's tax return and issued Varian a Notice of Deficiency in which, among other things, he disallowed Varian's claimed deduction under section 245A. The Commissioner also increased Varian's section 78 dividend by nearly $1.9 million.[2] The Commissioner further determined, in the alternative, that if Varian was entitled to deduct its section 78 dividend under section 245A, then "I.R.C. § 245A(d) would disallow any foreign tax credits attributable to that amount. Accordingly, [Varian's] foreign tax credits [would] be reduced by approximately $6,362,356."

Varian timely petitioned our Court for a redetermination of the Commissioner's determinations. In its Petition, Varian alleged that the disallowance of its section 245A deduction was erroneous. Varian also alleged for the first time that it is entitled to additional section 245A deductions (on top of those claimed in its return) of approximately $100 million, primarily related to the portion of its section 78 dividend arising from its lower tier CFCs.

On September 27, 2023, Varian filed the Motion for Partial Summary Judgment now before us. In its Motion, Varian asks us to determine as a matter of law that it is entitled to a deduction under section 245A for its section 78 dividend for the 2018 Year. On December 4, 2023, the Commissioner filed his own Cross-Motion for Partial Summary Judgment asking for, in effect, the opposite conclusion. Further briefing ensued, and we held a hearing on the Motions on May 17, 2024. After the U.S. Supreme Court issued its decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we sought the parties' views on the impact of the *Loper Bright* decision on this case, which they provided on July 29, 2024.

---

[2] Varian does not dispute this adjustment.

*Discussion*

I.      *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

The parties generally agree with respect to the relevant facts, and there is no dispute that we may resolve their Motions as a matter of law.

II.     *Legal Principles*

We begin by considering some legal principles established more than 100 years ago.

A.      *Historical Background*

The United States has long taxed the worldwide income of its citizens and domestic corporations. *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924). This policy choice creates the potential for double taxation—that is, taxation of the same income by both the United States and another country. *See AptarGroup Inc. v. Commissioner*, 158 T.C. 110, 112 (2022).

To address the risk of double taxation, since 1919 the law has allowed U.S. citizens and domestic corporations to elect to claim a credit for income tax paid to a foreign country. *See* Revenue Act of 1918, ch. 18, § 238(a), 40 Stat. 1057, 1080–81; *see also Burnet v. Chi. Portrait Co.*, 285 U.S. 1, 12 (1932). The law also permitted U.S. corporations that were shareholders in foreign corporations to claim foreign tax credits for certain taxes paid by the foreign corporations. *See* Revenue Act of 1918, ch. 18, § 240(c), 40 Stat. at 1082 (subsequently revised and eventually codified at I.R.C. § 902 by the Internal Revenue Code of 1954, ch. 736, § 902, 68A Stat. 1, 286); *Am. Chicle Co. v. United States*, 316 U.S. 450, 453–54 (1942); *see also United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 135 (1989). But, while this system eliminated double tax

in some situations, it also led to disparate treatment of U.S. corporations that conducted business through foreign branches rather than foreign subsidiaries. *See Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 982 n.21 (5th Cir. 1977). We explain by way of a simplified example.[3]

Imagine that USCo was a U.S. corporation that earned income in the United States and also operated a foreign branch in Country A. The foreign branch was not a separate entity from USCo for federal tax purposes, so its earnings were immediately taxable to USCo in the United States. *See Columbian Rope Co. v. Commissioner*, 42 T.C. 800, 817 (1964).

If USCo's foreign branch had $100 of earnings in Country A, then all $100 would have been immediately taxable to USCo in the United States. Assuming a 20% U.S. corporate tax rate, USCo preliminarily would have owed $20 in U.S. tax. If, however, Country A also taxed the earnings at 15%, then USCo would instead have paid $15 of tax to Country A and would have been entitled to a $15 credit against its U.S. tax. The $15 credit would have offset USCo's preliminary tax liability of $20 in the United States, with the ultimate result that USCo would have owed $5 in U.S. tax.

Now consider AmCo, another U.S. corporation that operated in Country A. But, rather than using a branch, AmCo operated through a foreign subsidiary (F Sub). Unlike a foreign branch, F Sub would have been a separate entity from AmCo for U.S. tax purposes, and its earnings from Country A generally would have been taxable to AmCo only when repatriated in the form of a dividend (or otherwise attributed to AmCo). *See Anderson, Clayton & Co.*, 562 F.2d at 976; *Whirlpool Fin. Corp. & Consol. Subs. v. Commissioner*, 154 T.C. 142, 151–53 (2020) (citing *Textron Inc. & Sub. Cos. v. Commissioner*, 117 T.C. 67, 73 (2001)), *aff'd*, 19 F.4th 944 (6th Cir. 2021); *Vetco Inc. & Subs. v. Commissioner*, 95 T.C. 579, 585 (1990).

If F Sub earned $100 in Country A, and, as in the foreign branch example, Country A imposed $15 of tax on those earnings, F Sub would have $85 to distribute to AmCo. And AmCo would owe $17 of U.S. tax on that distribution ($85 × 20% = $17). Note that AmCo's U.S. tax liability would have been lower than USCo's ($17 versus $20). Like

---

[3] The example is for illustrative purposes only and does not reflect all the complexities of the foreign tax credit.

USCo, however, AmCo would still have been able to credit the full $15 of tax that F Sub paid to Country A, leaving it with a net U.S. tax liability of $2 ($3 less than USCo).[4]

Thus, AmCo, operating through a foreign subsidiary, would have had a better tax outcome than USCo, operating through a foreign branch. While foreign tax credits eliminated double tax on Country A earnings in both cases, AmCo had less U.S. taxable income than USCo, and thus a larger proportionate credit, because it received only after-tax earnings from Country A. Considering this outcome to be inappropriate, Congress set out to eliminate the disparate taxation of foreign earnings as part of its comprehensive changes to the international tax system in 1962.

B.    *Addition of Section 78*

In 1962, Congress enacted the Revenue Act of 1962, Pub. L. No. 87-834, 76 Stat. 960. The Act adopted new section 78 to address the perceived disparity highlighted above.[5] *See* Revenue Act of 1962, § 9(b), 76 Stat. at 1001. Section 78 read as follows:

> Sec. 78. Dividends received from certain foreign corporations by domestic corporations choosing foreign tax credit.
> If a domestic corporation chooses to have the benefits of subpart A of part III of subchapter N (relating to foreign tax credit) for any taxable year, an amount equal to the taxes deemed to be paid by such corporation under section 902(a)(1) (relating to credit for corporate stockholder in foreign corporation) or under section 960(a)(1)(C) (relating to taxes paid by foreign corporation)

---

[4] For a more complete and complex example, see the Report of the Senate Finance Committee on the Revenue Act of 1962 (1962 Senate Finance Committee Report), which set out reasons for enacting section 78. S. Rep. No. 87-1881, at 66–67 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3297, 3368–70.

[5] The Act also introduced subpart F of part III, subchapter N of chapter 1 of subtitle A of the Code. Revenue Act of 1962, § 12(a), 76 Stat. at 1006. Historically, the so-called subpart F provisions have required significant U.S. shareholders of CFCs to pay current U.S. tax on investment income and other types of mostly "portable" income earned through the foreign corporations. *TBL Licensing LLC v. Commissioner*, 158 T.C. 1, 27 n.18 (2022), *aff'd*, 82 F.4th 12 (1st Cir. 2023). For a general discussion of subpart F, see Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations & Shareholders* ¶ 15.61 (2020), Westlaw FTXCORP.

for such taxable year shall be treated for purposes of this title (other than section 245) as a dividend received by such domestic corporation from the foreign corporation.

Revenue Act of 1962, § 9(b), 76 Stat. at 1001.

Returning to our simplified example, after the adoption of section 78, if AmCo were to claim foreign tax credits for the $15 it was deemed to pay to Country A, then section 78 would treat AmCo as if it received an additional $15 dividend from F Sub for the year. *See Champion Int'l Corp. v. Commissioner*, 81 T.C. 424, 427 (1983) ("The effect [of section 78 was] to treat the domestic corporation as though it had received a distribution out of the foreign corporation's before-tax profits and then paid the foreign income tax thereon itself."). Therefore, instead of reporting $85 of taxable income, AmCo would report $100 of taxable income, just like USCo (the $85 actual dividend from F Sub plus the $15 deemed dividend under section 78). *See H.H. Robertson Co. v. Commissioner*, 59 T.C. 53, 77 n.13 (1972) ("As a consequence of sec. 78 'gross-up,' the total profits of the foreign corporation in respect of a particular dividend would be taken into account for U.S. tax purposes . . . ."), *aff'd*, 500 F.2d 1399 (3d Cir. 1974) (unpublished table decision). Accordingly, after applying its foreign tax credits, AmCo would owe $5 in U.S. tax (($100 × 20%) − $15 = $5), again like USCo. The adoption of section 78 thus eliminated the perceived tax benefit to U.S. corporations operating through foreign subsidiaries.[6]

After the enactment of section 78, the Department of the Treasury and the Internal Revenue Service (together, Treasury) adopted the first regulation under section 78. *See* T.D. 6805, 1965-1 C.B. 38, 30 Fed. Reg. 3208 (Mar. 9, 1965). In relevant part, the regulation explained that "[a] section 78 dividend shall be treated as a dividend for all purposes of the Code, except that it shall not be treated as a dividend under section 245, relating to dividends received from certain foreign corporations, or increase the earnings and profits of the domestic corporation." Treas. Reg. § 1.78-1(a) (1965). The regulation also explained that section 78 dividends are treated as received in the same taxable year in which the U.S. corporation (1) received the dividend of foreign earnings upon which it was deemed to pay foreign taxes or (2) included in its subpart

---

[6] Again, for a more complete example, see the 1962 Senate Finance Committee Report.

F income amounts for which it had deemed paid foreign taxes under section 960. Treas. Reg. § 1.78-1(d) (1965).

Section 78 remained virtually unchanged for more than 50 years until Congress's sweeping changes to the international tax system in 2017. These changes form the basis of the dispute in this case.

C.      *2017 Tax Cuts and Jobs Act*

Among other things, the TCJA made significant changes to how the United States taxes income that a domestic corporation earns outside the United States. *See Moore v. United States*, 144 S. Ct. 1680, 1685 (2024). "The primary goal was to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States instead of abroad." *Id.* at 1685–86.

As relevant here, the TCJA moved the United States from the worldwide system of taxation described above to a partial territorial tax system. *See id.* In simplified terms, under a partial territorial system, certain income a domestic corporation earns from subsidiaries operating outside the United States generally is eliminated from the U.S. taxable base through a deduction.[7]

As part of this transition, the TCJA enacted a one-time tax referred to as the Mandatory Repatriation Tax (MRT). TCJA § 14103, 131 Stat. at 2195–208 (codified at I.R.C. § 965); *see also Moore*, 144 S. Ct. at 1686. The MRT generally required that certain accumulated foreign earnings held by CFCs, but not repatriated to the U.S. shareholders, be included in the U.S. shareholders' subpart F income and taxed at a lower-than-normal rate. *See* TCJA § 14103, 131 Stat. at 2195–208; *Moore*, 144 S. Ct. at 1686.

1.      *New Section 245A*

Key to this case, the TCJA enacted new section 245A, granting U.S. corporations a deduction for the foreign-source portion of any dividends they received from certain foreign corporations. TCJA

---

[7] This is in contrast to a worldwide system, under which income from subsidiaries operating outside the United States is first included in U.S. taxable income, with any increase in tax fully or partially offset with foreign tax credits. *See AptarGroup Inc.*, 158 T.C. at 112.

§ 14101(a), 131 Stat. at 2189–90. The operative rule of section 245A was included in subsection (a), which reads as follows:

> Sec. 245A. Deduction for foreign source-portion of dividends received by domestic corporations from specified 10-percent owned foreign corporations.
>
> (a) In general.—In the case of any dividend received from a specified 10-percent owned foreign corporation by a domestic corporation which is a United States shareholder with respect to such foreign corporation, there shall be allowed as a deduction an amount equal to the foreign-source portion of such dividend.

Section 245A also provides rules for calculating the foreign-source portion of dividends that a U.S. corporation may deduct from its income, *see* I.R.C. § 245A(c), as well as a rule limiting the foreign tax credit "with respect to any dividend" for which section 245A permits a deduction (which we will discuss later), *see* I.R.C. § 245A(d).[8]

As relevant here, the TCJA made new section 245A effective for "distributions made after . . . December 31, 2017." TCJA § 14101(f), 131 Stat. at 2192.

## 2.    *Amendment to Section 78*

To reflect new section 245A and other changes the TCJA made to the Code, Congress also amended section 78 to read:

> Sec. 78. Gross up for deemed paid foreign tax credit.
> If a domestic corporation chooses to have the benefits of subpart A of part III of subchapter N (relating to foreign tax credit) for any taxable year, an amount equal to the taxes deemed to be paid by such corporation under subsections (a), (b), and (d) of section 960 (determined without regard to the phrase "80 percent of" in subsection (d)(1) thereof) for such taxable year shall be treated for purposes of this title (other than sections 245 and 245A) as

---

[8] Relatedly, the TCJA amended section 246(c), which generally prohibits the section 245A deduction "in respect of any dividend on any share of stock" that the taxpayer has held for an insufficient period. *See* TCJA § 14101(b), 131 Stat. at 2191. There is no dispute in this case that Varian satisfied the relevant holding period.

a dividend received by such domestic corporation from the foreign corporation.

TCJA § 14301(c), 131 Stat. at 2222. In relevant part, the revised statute no longer references section 902, which the TCJA eliminated, *see* TCJA § 14301(a), 131 Stat. at 2221, and mirrors changes Congress made to section 960, *see* TCJA § 14301(b), 131 Stat. at 2221–22. In addition, it provides that section 78 dividends are not treated as dividends for purposes of section 245A.

Congress gave the amendments made to section 78, as well those made to sections 902 and 960, a different effective date from that used for section 245A. Specifically, it applied the amendments "to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end." TCJA § 14301(d), 131 Stat. at 2225. This meant that the amendments to section 78 (and sections 902 and 960) had different effective dates based on whether a taxpayer and its foreign subsidiaries use a calendar year tax year (January 1 to December 31) or a fiscal year tax year (e.g., July 1 to June 30).[9]

III.    *Varian's Entitlement to the Section 245A Deduction*

We now consider whether, in light of these rules, Varian is entitled to deduct an amount equal to its section 78 dividend for the 2018 Year. For the reasons set out below, we conclude that it is.

A.    *Statutory Analysis*

We begin with the familiar maxim "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). It is after all "the sole function of the courts—at least where the disposition required by the text is not absurd—'. . . to enforce [plain

---

[9] On January 2, 2019, the Chairman of the House Ways and Means Committee released a Tax Technical and Clerical Corrections Act Discussion Draft addressing various "technical and clerical corrections" related to the TCJA. Chairman Kevin Brady, Committee on Ways and Means, U.S. House of Representatives, *Tax Technical and Clerical Corrections Act Discussion Draft* (Jan. 2, 2019), https://republicans-waysandmeansforms.house.gov/uploadedfiles/tax_technical_and_clerical_corrections_act_discussion_draft.pdf. The draft included a proposed fix for the effective date mismatch between new section 78 and section 245A, *id.* at 73, but Congress never acted on the proposal. We draw no inference from this congressional inaction. *See Alexander v. Sandoval*, 532 U.S. 275, 292–93 (2001).

statutory text] according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). And when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). Applying these principles here produces a clear result.

As discussed above, section 245A allows a U.S. corporation to deduct an amount equal to the foreign-source portion of "*any dividend received* from a specified 10-percent owned foreign corporation" in which it "is a United States shareholder with respect to such foreign corporation." I.R.C. § 245A(a) (emphasis added). To calculate the foreign-source portion, the U.S. corporation must apply a ratio. I.R.C. § 245A(c)(1).[10]

In this case, the parties do not dispute that Varian is a "United States shareholder" of specified 10% owned foreign corporations. But they disagree as to whether Varian's section 78 dividend qualifies as a "dividend [it] received" within the meaning of section 245A(a). We conclude that it does.

Most significantly, the text of section 78 could hardly be clearer on this point. It states, in relevant part, that the amount Varian includes under section 78 "shall be treated for purposes of this title (other than section 245 [which is not at issue here]) *as a dividend received* . . . from the foreign corporation." I.R.C. § 78 (emphasis added). And section 245A(a) authorizes taxpayers to deduct "any dividend received from a specified 10-percent owned foreign corporation." Thus, the relevant text in the two provisions is effectively identical.

---

[10] Section 245A(c)(1) provides as follows:

Sec. 245A(c). Foreign-source portion.—For purposes of this section—

(1) In general.—The foreign-source portion of any dividend from a specified 10-percent owned foreign corporation is an amount which bears the same ratio to such dividend as—

(A) the undistributed foreign earnings of the specified 10-percent owned foreign corporation, bears to

(B) the total undistributed earnings of such foreign corporation.

Moreover, section 78 specifies that the amount to which it applies is treated as a dividend for purposes of the entire Code with just one exception. That exception is section 245, a provision not relevant here. The Commissioner's longstanding regulations reiterated this rule until their amendment in 2019. *See* Treas. Reg. § 1.78-1(a) (1965) ("A section 78 dividend shall be treated as a dividend *for all purposes of the Code*, except that it shall not be treated as a dividend under section 245, relating to dividends received from certain foreign corporations, or increase the earnings and profits of the domestic corporation." (Emphasis added.)).[11]

To summarize, section 78 provides that Varian must treat the amount to which section 78 applies as a dividend received from its foreign subsidiaries for all relevant purposes of the Code, and section 245A(a) provides a deduction for the foreign-source portion of *any* dividend received from such subsidiaries. The obvious conclusion is that section 245A and section 78, read together, authorize Varian to deduct its section 78 dividend for the 2018 Year. And no other provision in effect for that year disallows the deduction. Rather, we agree with Varian that the disparate effective dates for new section 245A and the amendments to section 78 resulted in a gap period in which its section 78 dividend qualified for a deduction under section 245A.

### B.    *The Commissioner's Arguments*

The Commissioner advances several arguments explaining why he thinks this result is incorrect. None alters the result here.

#### 1.    *Section 78 Dividends as Distributions*

The Commissioner's primary argument is that section 78 dividends are not qualifying dividends for purposes of section 245A because they are not "distributed (or treated as distributed) out of [a foreign corporation's] earnings to the U.S. shareholder." Resp't's Br. in Support of Cross-Mot. Summ. J. (Resp't's Br.) 21. The Commissioner bases his argument on the effective date provision under the TCJA, which states that section 245A applies to "distributions made after . . . December 31, 2017." TCJA § 14101(f), 131 Stat. at 2192. The Commissioner also points to section 245A(c)(2)(A), which, in describing how to calculate the foreign-source portion of a dividend, refers to "the

---

[11] For reasons we discuss later, the Commissioner's revised regulation does not change the result here. *See infra* Part III.B.4.

taxable year . . . in which the dividend is distributed." But the Commissioner's argument fails for at least five reasons.

### a.    *Operative Rule in Section 245A*

First, the operative rule in section 245A sets out the conditions for deductibility, but says nothing about distributions. Rather, it says simply that the deduction is available "[i]n the case of any *dividend received*," I.R.C. § 245A(a) (emphasis added), essentially mirroring the text of section 78. We are not inclined to read the reference to "distributions" in the effective date provision to add another unstated requirement to the operative rule. Similarly, the references in section 245A(c)(2) to the "year . . . in which the dividend is distributed" and the "dividends distributed during [the] taxable year" simply explain how to compute the foreign-source portion of a dividend for purposes of section 245A. And the computation works just fine for section 78 dividends: one simply treats the section 78 dividend as the dividend for purposes of applying the instructions, as section 78 mandates. We disagree that a computation that may easily be applied to a section 78 dividend somehow shows that section 78 dividends cannot qualify for the deduction.

### b.    *Meaning of "Dividend"*

Second, even if we did read a distribution requirement into section 245A(a), we would conclude that a deemed dividend under section 78 satisfies the requirement. Recall that a section 78 dividend is treated as a dividend for purposes of the entire Code, with one inapplicable exception. A dividend is a distribution, both under the statutory definition of the term and its ordinary meaning. The former, found at section 316(a), states that, "[f]or purposes of this subtitle [which includes section 245A], the term 'dividend' means any distribution of property made by a corporation to its shareholders . . . out of its earnings and profits accumulated after February 28, 1913, or . . . its earnings and profits of the taxable year." And there are many examples of the latter. *See, e.g.*, *Dividend*, *Black's Law Dictionary* (11th ed. 2019) (defining "dividend" as "[a] portion of a company's earnings or profits distributed pro rata to its shareholders"); *Dividend*, *Random House Webster's College Dictionary* (2001) (defining "dividend" as "a sum paid to shareholders out of company earnings"); *Dividend*, *Webster's New International Dictionary of the English Language* (2d ed. 1959) (defining "dividend" as "[a] sum of money or quantity of commodities to be divided and distributed"). Therefore, if section 78 requires a taxpayer to deem

a dividend received from a foreign corporation, that dividend would also be deemed to be distributed by the foreign corporation, satisfying any implicit requirement in section 245A.[12] *Cf. Rawat v. Commissioner*, 108 F.4th 891, 896 (D.C. Cir. 2024) ("[A]lthough a definitional provision is typically used to give meaning to a defined term, rather than . . . to give meaning to the language of the definition, such a provision works both ways: if a statute defines 'house' as 'an enclosed structure used as a residence,' one would be hard-pressed to say that the statute's use elsewhere of the phrase 'an enclosed structure used as a residence' means anything but 'house.'"), *rev'g* T.C. Memo. 2023-14.

### c.  *Coordinated Statutory Amendments*

Third, coordinating amendments that Congress made to other Code sections in the TCJA confirm that a dividend or deemed dividend—without an express provision for a distribution—suffices to qualify for the deduction under section 245A. These amendments establish that either (1) no distribution requirement exists, or (2) alternatively, any distribution requirement is satisfied by a dividend or a deemed dividend.

### 1.  *Section 1248(j)*

We turn initially to section 1248, a provision that applies when a U.S. person who meets certain ownership requirements sells or exchanges stock in a foreign corporation. Section 1248(a) generally provides that the gain recognized on the sale or exchange of the stock "shall be included in the gross income of such person as a dividend." Put simply, section 1248(a) provides a recharacterization rule that treats a portion of the gain from the sale as a dividend inclusion for the seller. *See, e.g.*, Joel D. Kuntz & Robert J. Peroni, *U.S. International Taxation* ¶ B6.02[2][b] (2024), Westlaw USIT WGL.

The TCJA coordinated section 1248 with section 245A by adding section 1248(j). *See* TCJA § 14102(a)(1), 131 Stat. at 2192. New

---

[12] To the extent there are any questions about how the timing of a section 78 dividend squares with the effective date of section 245A, the Commissioner has not raised them. Therefore, the Commissioner has forfeited the argument. *See Rowen*, 156 T.C. at 115–16 (legal argument not raised in motion for summary judgment considered forfeited); *see also Mano-Y&M Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a [district] court."). Nevertheless, we do not believe that such an argument would prevail because Varian's section 78 dividends would likely be considered received as of the end of its taxable year (i.e., after December 31, 2017) since the calculation of the dividend depends on taxes deemed paid over the course of the entire year.

section 1248(j) provides, in relevant part, that "any amount received by the domestic corporation which is treated as a dividend by reason of this section shall [also] be treated as a dividend for purposes of applying section 245A."

The Commissioner tells us this amendment would have been unnecessary if simply recharacterizing an amount as a dividend were sufficient to qualify for a deduction under section 245A, because, even before the TCJA, section 1248(a) affected such a recharacterization. Thus, the Commissioner's argument goes, section 1248(j) was needed to satisfy the "distribution" requirement that he reads into section 245A. But the Commissioner misconstrues the statute, which, when considered carefully, contradicts his arguments.

To begin, the addition of section 1248(j) was necessary because the reach of the dividend recharacterization under section 1248(a) was unclear. Note carefully what section 1248 said before the addition of section 1248(j). It simply provided that gain recognized on a sale or exchange by a certain type of person would be included in the gross income of that person as a dividend. Note also that the provision did not say that the recharacterized amount would be a dividend for all purposes of the Code. Nor did it say that the dividend would be treated as a deemed distribution of some sort, although Congress certainly addressed distributions elsewhere in section 1248. *See, e.g.*, I.R.C. § 1248(f), (k). Accordingly, because the recharacterization work of section 1248(a) was limited in its reach, to ensure that gain recharacterized by virtue of section 1248(a) was treated as a dividend received for purposes of section 245A, Congress needed to adopt an affirmative rule. And that is exactly what it did in adding section 1248(j). There, Congress told us that gain recharacterized as a dividend by virtue of section 1248(a) would also "be treated as a dividend for purposes of applying section 245A." I.R.C. § 1248(j).

No such rule was necessary for a section 78 dividend. Existing section 78 already told us that the amount discussed in that section "shall be treated . . . as a dividend received by such domestic corporation from the foreign corporation" for purposes of this title. Saying that an amount will be treated in a particular manner "for purposes of this title" (i.e., the Code) is equivalent to listing every section in the Code and saying that the amount will be so treated for purposes of each section. Thus, Congress did not need to say more to bring a section 78 dividend within the scope of section 245A. Section 245A plainly is within the Code and section 78 therefore provided that the relevant amounts would

be treated as dividends received for purposes of that section, precisely as section 1248(j) did. By contrast, Congress did need to say something if it wanted to preclude a section 78 dividend from being considered under section 245A. And, for the year before us, it stayed silent.

Section 1248(j) highlights an even greater problem for the view the Commissioner advances. As we have said, the Commissioner claims that a deduction under section 245A is predicated on the existence of a distribution and a deemed dividend does not suffice. But section 1248 addresses gains on sales or exchanges of stock. Such transactions involve no actual distributions by the foreign subsidiary whose stock is being transferred. Any consideration in this type of transaction would come from a counterparty, not the subsidiary. Moreover, section 1248(a) does not create any deemed distribution—only a deemed dividend, which is inadequate in the Commissioner's view. So, if (as the Commissioner contends) a distribution (actual or expressly deemed) were a prerequisite for section 245A to apply, a person with recharacterized gain under section 1248(a) would be out of luck with respect to a section 245A deduction, absent some further rule.

The Commissioner acknowledges as much and contends that section 1248(j) fills the gap. But look at what that provision actually says. Specifically, it says that amounts treated as dividends for purposes of section 1248 "shall [also] be *treated as a dividend* for purposes of applying section 245A." I.R.C. § 1248(j) (emphasis added). To reiterate, section 1248(j) says that any amount it covers shall be treated as a dividend—*not* that it shall be treated as a distribution. So section 1248(j) does not even fill the gap the Commissioner purports to see. Or, put another way, if we were to accept the Commissioner's argument, then the addition of section 1248(j) would have been insufficient to entitle taxpayers to the deduction under section 245A.[13] And of course we do not presume that Congress enacts legislation that has no effect. *See United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring in part and concurring in judgment) (describing the "presumption against ineffectiveness" as reflecting "the idea that Congress presumably does not enact useless laws"); *see also United States v. Hayes*, 555 U.S. 415, 427 (2009) (rejecting an interpretation in

---

[13] When pressed on this point at the hearing, counsel for the Commissioner argued that we should read section 1248(j) and a similar provision in section 964(e)(4) as if they required that amounts "be treated as a dividend of the type that would qualify [for a deduction] under section 245A." Hearing Tr. 67. We are unconvinced by this interpretation, which impermissibly adds words and concepts to the text Congress actually adopted.

part because under it the statute would have been a nullity in multiple states); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012).

Perhaps seeing the wisdom of these principles, the Commissioner acknowledges that the addition of section 1248(j) was in fact sufficient to provide a deduction for amounts under section 245A. The same is true for section 78. As we have demonstrated, section 1248(j) added nothing to the Code that section 78 did not already include. Rather, the wording of section 1248(j) confirms that section 245A requires nothing more than (1) an amount being treated as a dividend and (2) that treatment being extended for section 245A purposes either by express cross-reference to section 245A (as in the case of section 1248) or by a broader cross-reference that includes section 245A (as in the case of section 78).

Finally, as if all this were not enough, section 1248(j) also undercuts the Commissioner's reliance on the computation provisions of section 245A. Recall that, for purposes of determining the foreign-source portion of a dividend, section 245A(c) applies a ratio. Specifically, section 245A(c)(1) provides that the foreign-source portion "is an amount which bears the same ratio to [the] dividend" as "the undistributed foreign earnings" of the foreign corporation bear to "the total undistributed earnings" of the foreign corporation. And in calculating the undistributed earnings, section 245A(c)(2) refers to the "year . . . in which the dividend is distributed" and the "dividends distributed during [the] year." Because section 78 dividends, the Commissioner says, are not actual or deemed "distributions," the ratio does not work, presumably because there would be no "year . . . in which the dividend is distributed."

But, if the Commissioner's reading of section 245A(c) were correct, the same analysis would apply to amounts treated as dividends under section 1248. Those amounts also are not "distributed," and nothing in section 1248 deems them as distributions. So for those amounts too the ratio would not work if an actual or deemed distribution were required. Yet, at our hearing on the Motions held on May 17, 2024, counsel for the Commissioner conceded that the ratio would work for section 1248 dividends and that they are in fact eligible for the deduction under section 245A. So, the computation provisions of section 245A cannot be the impediment that the Commissioner portrays them to be.

## 2.    *Section 964(e)(4)*

Similarly, section 964(e), the other provision the Commissioner cites, deals with gain recognized by a CFC on the sale or exchange of stock in a foreign corporation. Like section 1248(a), section 964(e)(1) recharacterizes a portion of the gain as a dividend received by the CFC. And Congress coordinated the rule with section 245A by providing that the deduction "shall be allowable" to the ultimate U.S. shareholder for the resulting subpart F income "in the same manner as if such subpart F income were a dividend received by the shareholder from the selling [CFC]." I.R.C. § 964(e)(4)(A)(iii). For the same reasons that we discussed with respect to section 1248, Congress needed to add an affirmative rule if it wished for gain recharacterized under section 964(e)(4) to get the benefit of section 245A. Moreover (as with section 1248), nowhere does the text of section 964 provide specifically for a distribution to a domestic corporation, as the Commissioner says is required. Rather, the amounts for which a taxpayer may claim a section 245A deduction are subpart F inclusions (i.e., not distributions). And again, section 964(e)(4) does not fill the purported gap, because it provides for the subpart F inclusion to be treated in the same manner as a *dividend* and not as a distribution. Once more, therefore, Congress viewed treating an amount as a dividend as sufficient to accomplish its purpose of making an amount eligible for a deduction under section 245A.[14]

To summarize, as the Commissioner appears to agree, adopting a rule that treats an amount *as a dividend* for purposes of section 245A is sufficient to qualify the amount for the dividends received deduction. *See* I.R.C. §§ 964(e)(4)(A)(iii), 1248(j). And, by its express terms, section 78 already treated the amount discussed there as a dividend for all purposes of the Code (other than one section that is not relevant here). Accordingly, there was no need for Congress to change section 78 to confirm that section 78 dividends qualified for the deduction.[15]

---

[14] In section 245A(f), Congress took the same approach with respect to amounts under section 1291, excluding those amounts from the deduction by providing that they "shall not be treated as a dividend for purposes of this section."

[15] For this reason, we also reject the Commissioner's argument that the lack of a specific rule allowing the deduction for section 78 dividends—in contrast to the specific rules provided under section 1248 and section 964—means that the deduction is not available. And, of course, Congress did ultimately provide a specific rule under section 78, as we discuss further below. But that rule was not in effect for the year before us.

d.    *Historical Practice*

Fourth, our conclusion here is consistent with Congress's historical practice in this area of the Code.  In 1976, Congress made changes to sections 902, 960, and 78 repealing special rules that had applied to investments in "less developed country corporations," a term that was previously defined at section 902(d).  *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1033, 90 Stat. 1520, 1626–28.  The changes to sections 902, 960, and 78 were substantive, and Congress made them effective "in respect of any distribution received by a domestic corporation" before or after specified dates.  Tax Reform Act of 1976 § 1033(c), 90 Stat. at 1628.

This was an interesting choice because, as counsel for the Commissioner acknowledged at the hearing, section 960 applies primarily in the context of subpart F inclusions, which are not distributions (or deemed distributions).  Under the Commissioner's argument, therefore, because Congress made the 1976 amendments effective only for "distribution[s] received," the change to section 960 and the related change to section 78 arguably would never have taken effect.  But, as we have said, we do not presume that Congress enacts ineffective legislation.  And Treasury apparently agreed, confirming by regulation that, for purposes of the new regime, section 951 inclusions would qualify as deemed distributions.  *See* T.D. 7649, 1979-2 C.B. 274, 274, 44 Fed. Reg. 60,085, 60,085–86 (Oct. 18, 1979).  The historical determination that subpart F inclusions qualified as distributions for purposes of applying the effective date provision of the 1976 amendments further supports our conclusion that section 78 dividends similarly qualify here.

e.    *Section 78 Amendment*

A final word on textual inferences for now.  Congress appears to have been well aware that, without some intervention, section 78 dividends would be deductible under section 245A.  That is why it amended section 78 to preclude the deduction.  But Congress chose a later effective date for this amendment, allowing fiscal year taxpayers like Varian to deduct their section 78 dividends for a limited time.  This choice stands in contrast to another express exclusion from section 245A, which Congress crafted to take effect at the same time as the deduction.  *See* I.R.C. § 245A(f) (expressly excluding from deductibility any amounts treated as dividends by section 1291(d)(2)(B)).  In other words, Congress knew how to draft a

contemporaneous exclusion if it so desired. *See Knight v. Commissioner*, 552 U.S. 181, 188 (2008) ("The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [a] reading [that relies on the rejected alternative text].")); *Thomas v. Commissioner*, 160 T.C. 371, 382 (2023) (citing *Knight v. Commissioner*, 552 U.S. at 188). But, for section 78, it chose a different course, and we will not ignore its choice. *See Cheneau*, 997 F.3d at 920; *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

### 2. *The Import of Sections 275(a)(4) and 261*

The Commissioner further argues that section 275(a)(4) precludes Varian from claiming any deduction under section 245A for its section 78 dividend. In relevant part, section 275 provides:

> Sec. 275. Certain taxes.
>         (a) General rule.—No deduction shall be allowed for the following taxes:
>
>                 . . . .
>                 (4) Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States if the taxpayer chooses to take to any extent the benefits of section 901.

The Commissioner claims that permitting the deduction of section 78 dividends violates this rule because it "would be an effective deduction for the amount of 'the taxes deemed to be paid' by [Varian] under section 78 and other Code sections," for which it already claims foreign tax credits. Resp't's Br. 31. But the Commissioner's argument again misses the mark.

Section 275(a)(4) prohibits deductions "for [specified] taxes." But section 78 dividends are not "taxes." Rather, they are "amount[s] equal to the taxes deemed to be paid" by a U.S. corporation that are "treated . . . as a dividend" for all relevant purposes of the Code. And section 245A provides a deduction for dividends, not taxes. As we explained in *Champion International Corp.*, 81 T.C. at 427, "[t]he effect [of section 78 was] to treat the domestic corporation as though it had received a distribution out of the foreign corporation's before-tax profits and then paid the foreign income tax thereon itself." Put differently, the deduction is for the deemed distribution the domestic corporation is

considered to receive, not for the taxes that corporation is deemed to pay.[16]

The Commissioner might counter that the deemed dividend here amounts to the same thing as taxes. But the text of section 275(a) does not stretch so far. The statute prohibits what it says it prohibits (here, deductions "for . . . taxes"). It does not extend to any circumstance that arguably has the same substantive effect.[17] Accordingly, section 275(a)(4) has no application to the facts before us.

Next, the Commissioner focuses on the text of section 261 to support his argument. Specifically, section 261 provides: "In computing taxable income no deduction shall in any case be allowed in respect of the items specified in [part IX of subchapter B]." In essence, the Commissioner argues that section 261 broadens the class of deductions disallowed by section 275(a)(4) to include deductions "in respect of" foreign income taxes. But we disagree with the Commissioner that section 261 has the broadening effect he claims it does.

As the Supreme Court has said, and the Commissioner acknowledges in his Brief, section 261 serves as a "priority-ordering directive" requiring that items specified in part IX of subchapter B take precedence over other deduction granting provisions in computing taxable income. *See Commissioner v. Idaho Power Co.*, 418 U.S. 1, 17 (1974); *see also Pac. Power & Light Co. v. United States*, 644 F.2d 1358, 1360 (9th Cir. 1981) (citing *Commissioner v. Idaho Power Co.*, 418 U.S. at 17). For example, section 261 (combined with section 161) ensures that certain capital expenditures for which a deduction is disallowed by section 263 are not deducted under section 167 for exhaustion and wear and tear. *See Commissioner v. Idaho Power Co.*, 418 U.S. at 17–18. But section 261 applies only so far as an item is specified in Part IX. Because

---

[16] As we discuss further below, section 245A has its own rule addressing the U.S. tax treatment of those taxes. *See infra* Part IV.

[17] If we were to give section 275(a)(4) such a broad construction, one might question whether the enactment of section 78, which the Commissioner argues was "to prevent the effective allowance of both a credit and a deduction for deemed-paid foreign taxes," Resp't's Br. 12, would have been superfluous, since a predecessor of section 275(a)(4) was already on the books at the time section 78 was adopted, *see* Internal Revenue Code of 1954 § 164(b), 68A Stat. at 47 ("No deduction shall be allowed for the following taxes: . . . (6) Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States, if the taxpayer chooses to take to any extent the benefits of section 901 (relating to the foreign tax credit).").

section 275(a)(4) precludes deductions for *foreign taxes* for which foreign tax credits are claimed, Varian's deduction for its section 78 *dividends* is not disallowed.

Additionally, it would make little sense for Congress to specify in section 275 and the 26 other provisions currently referenced by section 261 that deductions are disallowed for certain, specifically described items only to broaden the scope of the disallowance for all those items in a separate, one-sentence provision. Not only would that reading of section 261 contradict the clear text of multiple other provisions, but it would render the more limited disallowances in those provisions duplicative of section 261. We see little sense in reading the text this way when a perfectly reasonable alternative is available. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955))). Accordingly, we reject the Commissioner's argument that sections 261 and 275(a)(4) combined preclude Varian's deduction.[18]

### 3. *Policy Considerations*

Throughout his Motion papers, the Commissioner appeals to policy considerations to argue that Varian cannot be allowed a deduction for its section 78 dividend. A principal concern, according to the Commissioner, is that allowing the deduction will produce "an absurd result and an inappropriate windfall for a subset of taxpayers" (i.e., taxpayers like Varian) and will permit effectively "both a deduction and a credit for foreign taxes," which he says section 78 "was enacted specifically to prevent." Resp't's Br. 3.

At the May 17, 2024, hearing, the Court asked counsel whether these and similar statements in the Commissioner's Motion papers were intended to invoke the absurd results doctrine, which allows a court to depart from a statute's clear text in certain circumstances. Counsel clarified that the Commissioner was not invoking the doctrine. The

---

[18] That section 261 applies "in respect of the items specified in this part" does not give us license to disallow deductions not specified in the referenced part or to expand the scope of the specified items beyond what the text of the relevant provisions can fairly bear. No matter how broadly one reads the phrase "in respect of," *see infra* Part IV.A, the analysis under section 261 is cabined by "the items specified"—i.e., the operative rules (like section 275) that disallow specific deductions. Section 261 explains how these provisions relate to other Code provisions, but it does not change their substance.

decision was wise, because the absurd results doctrine imposes a high bar. Specifically, an interpretation is absurd only if the result would be "so gross as to shock the general moral or common sense," *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930), or if it is "quite impossible that Congress could have intended the result . . . and [if] the alleged absurdity is so clear as to be obvious to most anyone," *Tamm v. UST-U.S. Trustee* (*In re Hokulani Square, Inc.*), 776 F.3d 1083, 1088 (9th Cir. 2015) (quoting *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring in the judgment)). These circumstances are not present here.

For example, the Code is full of provisions that treat taxpayers differently. This does not mean that those provisions are absurd. *See Harrelson*, 282 U.S. at 61 ("Congress may select the subjects of taxation and qualify them differently as it sees fit; and if it does so in plain terms, as it has done here, it is not within the province of the court to modify the law by construction."); *see also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 271 (2019) ("[A] result that 'may seem odd . . . is not absurd.'" (quoting *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005))); *United States v. Paulson*, 68 F.4th 528, 544 (9th Cir. 2023) (stating that "a statute is not absurd if 'it is at least rational,'" and that "the bar for 'rational' is quite low" (first quoting *In re Hokulani Square*, 776 F.3d at 1088; and then quoting *United States v. Lopez*, 998 F.3d 431, 438 (9th Cir. 2021), *abrogated on other grounds by Pulsifer v. United States*, 144 S. Ct. 718 (2024))).[19] Similarly, that our interpretation of section 245A will reduce the amount of income tax owed by certain taxpayers does not mean that result is absurd.

Further, general policy concerns (i.e., those that fall short of an absurd result) and speculation about congressional intent cannot override clear statutory text. *See United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023) ("Nor do we need to address any of the parties' policy arguments, which 'cannot supersede the clear statutory text.'" (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016))); *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001) ("Because the Code's plain text permits the

---

[19] The statute before us easily satisfies this standard. Indeed, one can come up with a number of reasons Congress might have chosen the text it did. For example, the effective date Congress chose for the amendments to section 78 conformed with the effective dates for important changes Congress made to the foreign tax credit (e.g., repealing section 902 and modifying section 960). Congress may reasonably have chosen to prioritize coordinating these changes in section 78 over those related to section 245A.

taxpayers here to receive these benefits, we need not address this policy concern."). That is so because "[a]chieving a better policy outcome . . . is a task for Congress, not the courts."[20] *Hartford Underwriters Ins. Co.*, 530 U.S. at 13–14; *see also Crowe v. Wormuth*, 74 F.4th 1011, 1032 (9th Cir. 2023) ("[O]ur role is not to devise a 'better' administrative scheme than the one Congress enacted. '[P]ractical difficulties . . . do not justify departure from the [statute's] plain text.'" (quoting *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 509 (2014))); *Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) ("We are not the final editors of statutes, modifying language when we perceive some oversight."); *Fisher Flouring Mills Co. v. United States*, 270 F.2d 27, 32 (9th Cir. 1958) ("Even if it be said that the omission . . . is a palpable error . . . this Court can give no remedy. 'To supply omissions transcends the judicial function.'" (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926))).

For the reasons we have described, Congress spoke clearly on the point at issue when it enacted section 245A and selected the mismatched effective dates for that provision and the amendments to section 78. Appeals to policy and Congress's overarching purpose cannot overcome these choices, no matter how much the Commissioner may dislike them. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002) ("[V]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993))); *see also Metzger Tr. v. Commissioner*, 693 F.2d 459, 472 (5th Cir. 1982) ("As understandable as it may be, yielding to the temptation to 'do equity' in a specific tax case by looking past plain language to judicially perceived purpose will not do."), *aff'g* 76 T.C. 42 (1981); *Metzger Tr.*, 76 T.C. at 59 ("Courts do not have the power to repeal or amend the enactments of the legislature even though they may disagree with the result; rather, it is their function to give the natural and plain meaning to the statutes as passed by Congress."). And an unenacted technical correction proposal does not alter the result.

The force of these principles is especially apparent in a case like this one, where Congress chose the rule it adopted over a readily available alternative. Specifically, the Senate version of the bill that became the TCJA had conforming effective dates for the bill's section 78

---

[20] In light of these clear directives from the Supreme Court, the Commissioner's citations of older cases that may reflect a different view of the judiciary's role in statutory construction cases cannot carry the day.

amendments and for new section 245A, which, if applied, would have precluded Varian's deduction. *Compare* S. 1, 115th Cong. § 14101(f) (2017) (applying new section 245A to "to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end"), *with id.* § 14301(d) (applying the same effective date to the amendments to section 78). The House version, on the other hand, proposed the disparate effective dates that ultimately were enacted. *Compare* H.R. 1, 115th Cong. § 4001(f) (2017) (applying new section 245A to "distributions made after . . . December 31, 2017"), *with id.* § 4101(d) ("The amendments made [to section 78] shall apply to taxable years beginning after December 31, 2017."). And Congress chose the House proposal, with slight modifications. *See* TCJA § 14101(f), 131 Stat. at 2192; *id.* § 14301(d), 131 Stat. at 2225.

Moreover, Congress chose the rule it adopted for section 78 despite making changes to other statutory provisions to reflect the adoption of section 245A and made those changes effective at the same time as section 245A. *See, e.g.*, TCJA § 14101(b) and (c), 131 Stat. at 2191 (inserting references to section 245A into section 246); *id.* subsec. (d) (inserting references to section 245A into section 904(b)). Congress could have included in TCJA § 14101 a similar, modest amendment to section 78 with an effective date matching that of section 245A, while leaving the more substantive amendments for TCJA § 14301 with an effective date that matched the repeal of section 902 and the amendments to section 960, but it followed a different path. We will respect the choice that Congress made and give effect to the statute as written. *Cf. Thomas*, 160 T.C. at 382.

Finally, the Commissioner argues that Varian's "position is illogical in treating its subpart F income as ineligible for the Section 245A DRD but the Section 78 gross-up arising from that inclusion as qualifying, even though the latter is the tax expense that was incurred on subpart F income." Resp't's Br. 23 n.10. We struggle to see why Varian's position is illogical. As a general matter, subpart F income is not a dividend; rather it is simply an inclusion in gross income. *See Rodriguez v. Commissioner*, 137 T.C. 174, 177–78 (2011), *aff'd*, 722 F.3d 306 (5th Cir. 2013). Therefore, subpart F income does not qualify for a deduction under the terms of section 245A. But, as we have already discussed, section 78 expressly deems Varian to receive a dividend, which does qualify for the deduction. So, at bottom, the Commissioner's problem lies with the text of the statute, not Varian's position.

#### 4. *Amended Treasury Regulation § 1.78-1*

Finally, the Commissioner argues that Treasury Regulation § 1.78-1, as revised June 21, 2019, precludes Varian from deducting its section 78 dividend. In relevant part, the second sentence of Treasury Regulation § 1.78-1(a) (as amended in 2019) says:

> A section 78 dividend is treated as a dividend for all purposes of the Code, except that it is not treated as a dividend for purposes of section 245 or 245A, and does not increase the earnings and profits of the domestic corporation or decrease the earnings and profits of the foreign corporation.

Subsection (c) then applies this sentence (and this sentence only) "to section 78 dividends that are received after December 31, 2017, by reason of taxes deemed paid under section 960(a) with respect to a taxable year of a foreign corporation beginning before January 1, 2018."[21]

The rule adopted by the revised regulations essentially gives one of the TCJA's amendments to section 78 an earlier effective date than provided for in the TCJA to prevent taxpayers like Varian from deducting section 78 dividends. But, as we have already observed, the plain text of the statutes provides for the deduction.[22] As the Supreme Court has said, "self-serving regulations never 'justify departing from the statute's clear text.'" *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018)); *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("[T]he need to rewrite clear provisions of the statute should have alerted [the Government] that it had taken a wrong interpretive turn."); *Koshland*

---

[21] The effective date for the rest of the regulation matches the effective date for the section 78 amendments and therefore does not apply for Varian's 2018 Year.

[22] In the preamble to the final regulation, Treasury acknowledged that the rule was "necessary to ensure that th[e] principle [that a section 78 dividend is not eligible for a deduction under section 245A] is consistently applied with respect to a CFC that uses a fiscal year beginning in 2017 . . . in order to prevent the arbitrary disparate treatment of similarly situated taxpayers." T.D. 9866, 2019-29 I.R.B. 261, 296, 84 Fed. Reg. 29,288, 29,319 (June 21, 2019). Treasury said that, without the rule in the revised regulation, "a U.S. shareholder of a fiscal year CFC would effectively be able to take both a credit and a deduction for foreign taxes by claiming a section 245A deduction with respect to its section 78 dividend." *Id.* A fair reading of this preamble is that Treasury thought the plain statutory text provided (or could be read as providing) for the deduction Varian claims, as we find here.

*v. Helvering*, 298 U.S. 441, 447 (1936) ("[W]here . . . the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation."); *Abdo v. Commissioner*, No. 5514-20, 162 T.C., slip op. at 21 (Apr. 2, 2024) (reviewed) ("Respondent's regulation . . . cannot change the result dictated by an unambiguous statute." (citing *Niz-Chavez*, 141 S. Ct. at 1485)).

The Commissioner initially argued that, even if we disagreed with his interpretation of the statute, the statute was at least ambiguous and that, under *Chevron,* we had to accept his regulation's attempt to fill the gap because his interpretation was permissible. But of course *Chevron* has now been overruled. *See Loper Bright*, 144 S. Ct. at 2273. A "permissible" interpretation of a statute no longer prevails simply because an agency offers it to resolve a perceived ambiguity. *See id.* at 2266, 2273.

As the Supreme Court observed in *Loper Bright*, "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning. That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Id.* at 2266 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)). And, in cases involving ambiguity, "instead of declaring a particular party's reading 'permissible' . . . , courts [must] use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Id.* Put another way, "in an agency case as in any other . . . even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—the reading the court would have reached if no agency were involved." *Id.* (cleaned up).

In short, "[i]n the business of statutory interpretation, if it is not the best, it is not permissible." *Id.* And, as we have shown above, the best (indeed the unambiguous) reading of the provisions at issue here permits Varian's deduction.

In reaching this conclusion, we have given "[c]areful attention to the judgment of the Executive Branch." *Id.* at 2273. The Executive's views "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 2262 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "The weight of such a judgment in a particular case," of course, "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those

factors which give it power to persuade, if lacking power to control." *Id.* at 2259 (quoting *Skidmore*, 323 U.S. at 140).

Nevertheless, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 2273. It "remains the responsibility of the court to decide whether the law means what the agency says." *Id.* at 2261 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in the judgment)). Indeed, "Congress expects courts to do their ordinary job of interpreting statutes." *Id.* at 2267. "And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute." *Id.*[23]

In the cases that come before us, "the question that matters [is]: Does the statute authorize the challenged agency action?" *Id.* at 2269. And, in answering that key question, we may not follow the Executive's guidance (expressed in a regulation or elsewhere) when (as here) it contradicts the statutory text. *See, e.g.*, *Niz-Chavez*, 141 S. Ct. at 1485; *Koshland v. Helvering*, 298 U.S. at 447. The Supreme Court's view on this principle is unanimous. *See Loper Bright*, 144 S. Ct. at 2264 (observing that, even under *Chevron*, "'[i]f the intent of Congress is clear, that is the end of the matter,' [*Chevron*, 467 U.S. at 842,] and courts were therefore to 'reject administrative constructions which are contrary to clear congressional intent,' [*Chevron*, 467 U.S. at 843, n.9]"); *see also id.* at 2297 (Kagan, J., dissenting) (summarizing *Chevron* and observing that the step one "inquiry is rigorous: A court must exhaust all the 'traditional tools of statutory construction' to divine statutory meaning. [*Chevron*, 467 U.S.] at 843, n.9. And when it can find that meaning—a 'single right answer'—that is 'the end of the matter': The court cannot defer because it 'must give effect to the unambiguously expressed intent of Congress.' *Kisor* [*v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)] (opinion of the Court); *Chevron*, 467 U.S., at 842–843"); *id.* at 2300 (Kagan, J., dissenting) ("Where Congress has spoken, Congress has spoken; only its

---

[23] *See also Loper Bright*, 144 S. Ct. at 2274 (Thomas, J., concurring) ("The judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws." (cleaned up)); *id.* at 2275 (Thomas, J., concurring) ("The Founders envisioned that the courts would check the Executive by applying the correct interpretation of the law." (cleaned up)); *id.* at 2284–85 (Gorsuch, J., concurring) (explaining that the framers designed a judicial system "in which impartial judges, not those currently wielding power in the political branches, would 'say what the law is' in cases coming to court" (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803))).

judgments matter. And courts alone determine when that has happened: Using all their normal interpretive tools, they decide whether Congress has addressed a given issue.").

That Congress delegated certain rulemaking authority to Treasury under section 245A[24] does the Commissioner no good here. This is so because his regulation purports to modify the effective date provision for new section 78, which could hardly have been clearer. In other words, it impermissibly attempts to change an unambiguous provision of the statute. As a result, the regulation falls outside the boundaries of any authority that Congress may have delegated under section 245A or 7805. *See, e.g.*, *United States v. Locke*, 471 U.S. 84, 95 (1985) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978))); *see also Loper Bright*, 144 S. Ct. at 2263 (noting that, where Congress has delegated discretionary authority to an agency, courts fulfill their role by "fix[ing] the boundaries of [the] delegated authority" (quoting Henry P. Monaghan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983))).

The Commissioner pushes back on this reading of the regulation. Specifically, he says that the regulation was not intended to interpret the statute's effective date, but rather "the ambiguous interaction between [s]ection 245A and [p]rior [s]ection 78 during the relevant period." Resp't's Br. 3. We are unconvinced for at least two reasons.

First, if the revised regulation truly were aimed at resolving an ambiguity between section 245A and prior section 78, one would expect it to reference section 902, which was referenced in prior section 78 and was still in effect for Varian's 2018 Year. *See* TCJA § 14301(d), 131 Stat. at 2225 (striking section 902 for "taxable years of foreign corporations beginning after December 31, 2017, and [for] taxable years of United States shareholders in which or with which such taxable years of foreign corporations end"). But neither the revised regulation nor its effective date provision mentions section 902. Rather, the sentence of the revised regulation purporting to disallow section 245A deductions for section 78 dividends applies only "to section 78 dividends that are received . . . by

---

[24] Section 245A(g) provides: "Regulations.—The Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section, including regulations for the treatment of United States shareholders owning stock of a specified 10 percent owned foreign corporation through a partnership."

reason of taxes deemed paid under section 960(a)." Treas. Reg. § 1.78-1(c). Therefore, the revised regulation ignores a key part of prior section 78 and presumably would not prevent Varian from claiming a section 245A deduction for its section 78 dividends related to section 902 deemed paid taxes. Thus, the omission of any reference to section 902 from the new regulation casts doubt on the Commissioner's claim that the regulation interprets prior section 78.

Second, and more importantly, we cannot ignore that the revised regulation makes precisely the same change as new section 78 (adding an explicit carveout for section 245A), but with an earlier effective date. No matter what the revised regulation intended to interpret, it cannot contradict the clear effective date provided for in the statutory text.[25] *See supra* pp. 28–31.

For these reasons, the amended regulation does not alter our conclusion as to Varian's claimed deduction.[26]

## IV.    *Section 245A(d) Limits on Foreign Tax Credits*

The final question we must resolve is how section 245A(d) affects the foreign tax credits that Varian claimed for its deemed paid foreign taxes. In relevant part, section 245A(d)(1) provides that "[n]o credit shall be allowed under section 901 for any taxes paid or accrued (or treated as paid or accrued) with respect to any dividend for which a deduction is allowed under this section."

### A.    *The Applicability of the Limitation*

The Commissioner argues that, if we allow Varian to deduct its section 78 dividend under section 245A, then section 245A(d) requires Varian to reduce its credits by an appropriate amount. In the Commissioner's view, that amount is the amount of Varian's deemed

---

[25] In this context, contrary to the Commissioner's arguments in his supplemental briefing, the revised regulation cannot be viewed as either "necessary" or "appropriate" to implement section 245A, regardless of how broadly one construes those terms as used in section 245A(g). *See, e.g.*, *Locke*, 471 U.S. at 95; *Koshland v. Helvering*, 298 U.S. at 447.

[26] In view of these conclusions, we need not address the many other arguments the parties raise regarding the procedural and substantive validity of amended Treasury Regulation § 1.78-1.

paid foreign tax that is attributable to the foreign earnings reflected in its section 78 dividend.

Varian, on the other hand, claims that section 245A(d) is irrelevant to its section 78 dividend. In essence, Varian would have us read section 245A(d)(1) as limiting foreign tax credits only for "taxes paid or accrued (or treated as paid or accrued) *on* any dividend." Because Varian misreads the operative text, notably the phrase "with respect to," we agree with the Commissioner.

The ordinary meaning of the phrase "with respect to" is "concerning" or "relating to." *See Respecting*, *The American Heritage Dictionary* (5th ed. 2018) ("With respect to; concerning."); *Cal. Tow Truck Ass'n v. City & Cnty. of S.F.*, 807 F.3d 1008, 1021 (9th Cir. 2015) ("[T]he phrase 'with respect to' is generally understood to be synonymous with the phrase[] 'relating to.'" (quoting *Fireman's Fund Ins. Co. v. Plant Insulation Co.* (*In re Plant Insulation Co.*), 734 F.3d 900, 910 (9th Cir. 2013))); *see also Khan v. United States*, 548 F.3d 549, 556 (7th Cir. 2008) ("Synonyms for 'with respect to' include 'pertaining to' and 'concerning.'" (citing *Encarta World English Dictionary* (2007))); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 856 (2018) (Thomas, J., concurring in the judgment) ("The phrase 'with respect to' means 'referring to,' 'concerning,' or 'relat[ing] to.'" (quoting *Oxford American Dictionary & Language Guide* (1999 ed.))). Courts have given this phrase and similar ones a broad meaning. *See Cal. Tow Truck Ass'n*, 807 F.3d at 1021; *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (defining the phrase "related to" as embracing those things "having a connection with or reference to" something else (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008))); *Adams Challenge (UK) Ltd. v. Commissioner*, 154 T.C. 37, 63 (2020) (analyzing relevant cases and finding "no appreciable difference between the terms 'related to,' 'connected with,' and 'in connection with'"). With this principle in mind, we conclude that section 245A(d)(1) limits foreign tax credits so far as the deemed paid foreign taxes for which a taxpayer claims credits relate to the dividends for which a taxpayer claims a deduction.

Varian's deemed paid foreign taxes undoubtedly relate to its section 78 dividend.[27] As we have explained, a section 78 dividend

---

[27] We of course acknowledge that, while the meaning of "related to" and similar phrases is broad, it is not without limits. *See Whistleblower 972-17W v. Commissioner*,

represents the share of a foreign corporation's earnings that were paid out to a foreign country as tax and therefore never repatriated (or attributed) to the domestic corporation. *See Champion Int'l Corp.*, 81 T.C. at 427. In other words, a section 78 dividend reflects genuine earnings of a foreign corporation that are taxed by a foreign country. By claiming foreign tax credits for those taxes, and including a section 78 dividend in income, a domestic corporation (like Varian) is treated as if it had received all the foreign corporation's foreign earnings and directly paid the tax on those earnings. Therefore, the foreign taxes Varian is treated as paying were "with respect to" its section 78 dividend within the meaning of section 245A(d)(1).

B.    *The Amount of the Limitation*

Having decided that section 245A(d)(1) limits foreign tax credits so far as they are attributable to taxes paid (or deemed paid) on the earnings reflected by Varian's section 78 dividend, we now consider the amount of the limitation. In his Motion papers, the Commissioner expresses this limitation through the following equation:

$$
\begin{array}{c}
\textit{Disallowed} \\
\textit{Foreign} \\
\textit{Tax Credit}
\end{array}
=
\begin{array}{c}
\textit{Deemed} \\
\textit{Paid} \\
\textit{Foreign} \\
\textit{Tax} \\
\textit{Credit}
\end{array}
\times
\left(
\frac{\textit{Section 78 gross-up}}{\textit{Net section 965 inclusion + section 78 gross-up}}
\right)
$$

We agree that this equation properly reflects the limitation provided for in section 245A(d)(1) in the context of foreign tax credits resulting from an inclusion in subpart F on account of the MRT.

To illustrate how this equation applies, assume AmCo was a 100% shareholder of a CFC (CFC 1) that had $100 of earnings in Country A. If Country A taxed those earnings at a 20% rate, then CFC 1 would have paid $20 of tax and had $80 of earnings remaining. If we assume the earnings qualified as subpart F income for U.S. tax purposes, then $80 would have been included in AmCo's subpart F income and AmCo would have been treated as paying $20 in tax to Country A under section 960(a). As a result, AmCo would have been entitled to $20 of foreign tax credits and would have been treated under section 78 as receiving a $20 dividend out of CFC 1's earnings. If AmCo claimed a deduction for the $20 section 78 dividend under section 245A, then

---

159 T.C. 1, 15–16 (2022) (reviewed) (discussing authorities). But the facts before us now do not approach those limits.

section 245A(d)(1) would reduce its allowable foreign tax credits as follows:

$$\underset{\substack{\$4 \\ (Disallowed \\ FTC)}}{} = \underset{\substack{\$20 \\ (Deemed \\ Paid \\ FTC)}}{} \times \left( \frac{\$20\ (Section\ 78\ gross\text{-}up)}{\$100\ (Subpart\ F\ inclusion^{28} + section\ 78\ gross\text{-}up)} \right)$$

The same principle applies to limit Varian's claimed foreign tax credits. Accordingly, because Varian claims a deduction under section 245A for its section 78 dividend, it must reduce its foreign tax credits by the amount that its deemed paid foreign taxes are attributable to the foreign earnings reflected in its section 78 dividend.

V.    *Conclusion*

For the reasons stated above, we will grant Varian's Motion to the extent it seeks a deduction under section 245A for its section 78 dividend and will deny the Commissioner's Motion to the extent it seeks the opposite conclusion. Furthermore, we will grant the Commissioner's Motion so far as it seeks to limit Varian's foreign tax credits under section 245A(d)(1).

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, FOLEY, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, JJ., agree with this opinion of the Court.

---

[28] For purposes of this example, the taxpayer has a general subpart F inclusion rather than a section 965 inclusion in its subpart F income. Either way, the equation achieves the same result.